921 P.2d 1253 (1996)
Eric Lee WASHINGTON, Appellant,
v.
The STATE of Nevada, Respondent.
No. 24034.
Supreme Court of Nevada.
August 16, 1996.
*1254 Eric Lee Washington, in pro. per., Carson City, for Appellant.
Frankie Sue Del Papa, Attorney General, Carson City; Stewart L. Bell, District Attorney, Clark County, for Respondent.

OPINION
PER CURIAM:
Appellant Eric Lee Washington challenges the district court's denial of his petition for post-conviction relief. Washington contends that his trial counsel was ineffective for failing to object to the prosecutor's comments on his post-arrest silence and his failure to call witnesses at trial. Because the prosecutor's comments shifted the burden of proof to Washington, we reverse Washington's conviction.

FACTS
On November 14, 1989, the state filed an information charging appellant Eric Lee Washington and his co-defendant Willie T. Smith each with one count of burglary and two counts of robbery.[1] The state accused Washington and Smith of entering a home with four other men and beating and robbing the occupants. The state prosecuted the other assailants separately.
The district court conducted a jury trial on January 4 and 5, 1990. The state presented only three witnesses in support of its case: the two victims and the arresting police officer. The victims testified that at about 4:00 a.m. on October 10, 1989, they heard a knock on the door of their house. As victim Mario Johnson reached for the door, six men stormed the house and began beating Mario and harassing Mario's girlfriend Rose Gruba. Mario testified at trial that he saw Willie Smith and Washington rush into the house. Mario was positive that he saw Smith and Washington because he had known them for several years. Mario testified that Washington did not hit him during the melee.
Mario testified that Rose retreated to the kitchen when the group stormed the house. Although he could not see well because of the beating, Mario stated that he heard Washington and Willie Smith go into the kitchen toward Rose. Rose eventually escaped through a back door and called the police.
After beating Mario, the group carried him into the bathroom and tossed him into the bath tub. Mario discovered after the group left that at least $25 was missing. Mario did not see anyone take the money.
Rose testified that she ran into the kitchen when she saw the group crash through the front door. According to Rose, Willie Smith approached her in the kitchen and hit her on the head. Willie then put Rose in a choke hold. Rose bit Willie's arm and attempted to swing a coffee pot at him. Willie ordered Rose to leave the apartment through the back door.
Rose discovered after the incident that $80 was missing from her purse. She did not see anyone steal the money. Rose testified that she did not see Washington come into her home. In addition, Rose did not know Washington *1255 and she could not identify him in court.
Police Officer Dave McArthur testified that he investigated the crime scene. Mario informed McArthur that Willie Smith and Washington were members of the group that had attacked him. Contrary to Rose's testimony, McArthur testified that Rose told him that Washington, not Willie Smith, was the person who had hit her while she was in the kitchen.
McArthur testified further that he arrested Washington in front of Washington's home two or three hours after the incident. McArthur read Washington the Miranda warnings. According to McArthur, Washington then admitted to being at the crime scene earlier in the evening but that he "didn't remember what had happened, because he'd been drunk or under a controlled influence...."
McArthur indicated that the contents of the police report contradicted portions of Mario's and Rose's trial testimony. The police report stated that Mario and Rose were watching television when the group attacked them. Mario and Rose testified at trial that they did not own a television. The police report also indicated that Rose, rather than Mario, answered the door. In addition, Rose informed McArthur that Washington and not Willie Smith attacked her.
Washington testified that he was outside Mario's and Rose's house at approximately 2:15 a.m. with a group of people. He saw others, including Willie Smith, engaging in a discussion with Mario. The group was harassing Rose and Mario. Washington indicated that two men named "Big Moe" and "Richard Lee" were with the group. Although Washington admitted that he entered the house briefly, he denied participating in the discussion.
The group left Mario's and Rose's house and went two doors down the street to Washington's residence.[2] The group listened to music and danced for a short time. The men then left while Washington stayed at home.
Washington testified that at 4:15 a.m. he heard noises coming from Mario's and Rose's house. Washington walked to the house and saw members of the group that had congregated earlier beating up Mario. Someone mentioned during the fracas that the police had been called. Washington testified that he calmly broke up the fight and told the assailants to flee before the police arrived. Washington then returned to his house.
The police arrested Washington without incident at his home. Washington asserted that Officer McArthur did not arrest him, but that McArthur's partner did. Washington contended that McArthur detained Washington's cousin, Clint Smith, while the other police officer read Washington the Miranda warnings.
On cross-examination, the prosecutor challenged Washington's version of his arrest. Washington discounted Officer McArthur's testimony that he had informed the police that he could not remember the events of the evening because he was intoxicated. According to Washington, the only statement he made to the police was his request to take him to Mario's and Rose's house to give them an opportunity to identify him.
The prosecutor challenged Washington's story:
Q You had your Miranda rights read to you?
A Yes, I did.
Q And you understood them?
A Yes, I did.
Q Did you talk to the officer?
A Not beforenot after he read me my rights.
Q Did you ask for an attorney at that point?
A No. I didn't.
Q From the time that you had your Miranda rights read to you till today, have you ever told the police officer or someone in authority your story?

*1256 A I told my lawyer. I never told the police officer.
. . . . .
Q And you didn't make a statement that night that these guys were beating up [Mario and Rose]?
A No, I didn't. No, I didn't.
Q When you were booked into the jail when you were arrested on this charge, you didn't tell the booking officer your story; did you?
A No, I didn't. Iwho's the booking officer?
Q Did you tell anybody in the jail your story?
A Ithe first officer I talked to was a Jay Smith, the one that came into the house and put the handcuffs on me, and the only thing I told him wasI asked him to take me back down there so they can identify me, `cause I was sure he was mistaken.
During closing arguments, the prosecutor contended that Washington had not supported his defense. The prosecutor attacked Washington's story by noting that some of the people Washington mentioned in his testimony had not testified at trial: "Where's Big Moe? Where's Richard T.? If Eric [Washington] was living with his cousin and his cousin was there, where is Clint Smith? What has the state proved?"
The jury convicted Washington and Willie Smith of all the charges. The district court entered a judgment of conviction against Washington on February 14, 1990, of one count of burglary and two counts of robbery. The district court sentenced Washington to serve in the Nevada State Prison a term of four years for burglary and two terms of six years each for the robbery convictions. All prison terms run concurrently.
Washington's counsel filed an untimely notice of appeal on June 13, 1990. That appeal was never docketed in this court.[3]
Washington filed a petition for post-conviction relief on February 4, 1991. The state conceded that Washington's trial counsel was ineffective for filing a late notice of appeal. See Lozada v. State, 110 Nev. 349, 871 P.2d 944 (1994). The district court appointed counsel to represent Washington and addressed the claims Washington could have raised on direct appeal in addition to the claims he raised in his post-conviction petition.
The district court denied Washington's petition on April 27, 1992. This proper person appeal followed.[4]

DISCUSSION

I. Whether trial counsel was ineffective for failing to object to the prosecutor's comments on Washington's post-arrest silence.

Washington contends that the prosecutor shifted the burden of proof by commenting on Washington's post-arrest silence. Under Lozada v. State, 110 Nev. 349, 871 P.2d 944 (1994), the district court properly addressed those issues appellant could have raised on direct appeal because trial counsel was ineffective for failing to perfect Lozada's appeal. Counsel's failure to object to the prosecutor's comments, however, waived any challenges to those comments for purposes of a direct appeal. We address the merits of *1257 Washington's contention despite counsel's failure to object because Washington contended that his trial counsel was ineffective for failing to object to the prosecutor's comments.
The prosecutor commented on Washington's invocation of his right to remain silent when he asked Washington whether he had told anyone his story that he did not participate in the robbery and beating. The prosecutor specifically asked Washington, "From the time that you had your Miranda rights read to you till today, have you ever told the police officer or someone in authority your story?" Washington indicated he had not. The prosecutor then asked if Washington had made a written statement to police. Washington replied he had not. The prosecutor then asked if Washington had told his story to the booking officer or to anyone else in jail. Washington said no.
The Due Process Clause of the Federal Constitution forbids the prosecution from commenting on a defendant's invocation of the right to remain silent after arrest. Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); Coleman v. State, 111 Nev. 657, 895 P.2d 653 (1995). In this case, the prosecutor directly commented on Washington's silence after his arrest.
This court will not reverse a conviction when the state comments on post-arrest silence if the comments were harmless beyond a reasonable doubt. Coleman, 111 Nev. at 664, 895 P.2d at 657. However, comments on post-arrest silence are not harmless in cases which rest "solely on the defendant's word versus the victim's word." Id. at 664, 895 P.2d at 657-58. Other than Officer McArthur's limited testimony, the victims provided the only evidence against Washington, and even their testimony was not overwhelming. Mario testified that Washington did not hit him or steal anything. Although according to Officer McArthur, Rose informed him that Washington had beaten her, Rose testified at trial that she did not know Washington and that Willie Smith, not Washington, had beaten her.
The state's case contained other inconsistencies. The police report differs in several important respects from the victims' testimony. Rose misidentified Washington in the police report. In addition, contrary to the police report, both Mario and Rose testified that they were not watching television when the attack occurred. Mario also testified differently at the preliminary hearing about who hit him first.
The state contends that the prosecutor properly commented on Washington's post-arrest silence because Washington's testimony conflicted with Officer McArthur's testimony. McArthur testified that Washington stated that he was at Mario's and Rose's house but that he was too intoxicated to remember what happened. Washington denied making this statement.
In Anderson v. Charles, 447 U.S. 404, 408, 100 S.Ct. 2180, 2182, 65 L.Ed.2d 222 (1980), the United States Supreme Court ruled that the ban on comments on post-arrest silence "does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks ... has not been induced to remain silent." The Court ruled that comments on post-arrest silence are unconstitutional only when the comments are designed to draw meaning from silence. Id. at 409, 100 S.Ct. at 2182.
The prosecutor's comments in this matter were not directed to Washington's inconsistent statements. The prosecutor asked Washington whether he had informed the police officer about his intoxication and Washington denied making such a statement. Not satisfied with this reply, the prosecutor went beyond commenting on the inconsistent statements and proceeded to attack Washington's credibility by asking him whether he had informed the police of his "story" that he did not participate in the attack. This questioning was designed to draw meaning from Washington's silence and was directed to Washington's defense theory, not to inconsistent statements.
*1258 Given the limited evidence against Washington, trial counsel unreasonably failed to object to these comments. In addition, the prosecutor's comments prejudiced the defense because they shifted the burden of proof to Washington. Counsel was ineffective for failing to object to these comments. Warden v. Lyons, 100 Nev. 430, 683 P.2d 504 (1984), cert. denied, 471 U.S. 1004, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985).

II. Whether trial counsel was ineffective for failing to object to the prosecutor's comments regarding Washington's failure to present witnesses.

During closing arguments, the prosecutor also commented on three persons who Washington mentioned in his testimony but who Washington did not call to testify at trial. Washington stated that "Big Moe" and "Richard T." were with the group that had harassed Rose prior to the attack. Washington also testified that his cousin Clint Smith was present when he was arrested. The prosecutor inquired during closing arguments: "Where's Big Moe? Where's Richard T? If Eric [Washington] was living with his cousin and his cousin was there, where is Clint Smith? What has the state proved?"
Prosecution comments on the failure to present witnesses or to produce evidence unconstitutionally shift the burden of proof to the defense. Ross v. State, 106 Nev. 924, 803 P.2d 1104 (1990). Washington's counsel did not object to the prosecutor's comments. Although the prosecutor's comments on Washington's failure to call witnesses were brief, they were prejudicial when coupled with the prosecutor's comments on Washington's post-arrest silence. As the facts indicate, this case was close. The prosecutor's comments on the failure to call witnesses and Washington's post-arrest silence shifted the burden of proof to Washington and may have misled the jury into believing that Washington had a burden to prove his innocence. Counsel was ineffective for failing to object to these comments. Warden v. Lyons, 100 Nev. 430, 683 P.2d 504 (1984), cert. denied, 471 U.S. 1004, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985).

CONCLUSION
Because the prosecution shifted the burden of proof to Washington by improperly commenting on his post-arrest silence and his failure to call witnesses, we vacate the district court's order denying Washington's petition for post-conviction relief. We reverse Washington's convictions.[5]
NOTES
[1] Washington is the only appellant in this appeal.
[2] Washington had lived near Mario and Rose for only a few days.
[3] The clerk of the district court should have transmitted the record on appeal even though Washington filed a late notice of appeal. See NRAP 11. That appeal is technically now pending before this court. An untimely notice of appeal fails to vest jurisdiction in this court. Jordon v. Director, Dep't of Prisons, 101 Nev. 146, 696 P.2d 998 (1985). Accordingly, we lack jurisdiction to review Washington's direct appeal and we dismiss that appeal.
[4] Washington apparently has satisfied his sentences. Washington was sentenced in February of 1990 to three concurrent terms, the longest of which was six years. This appeal is not moot, however, because collateral consequences attach to judgments of conviction. Arterburn v. State, 111 Nev. 1121, 1124 n. 1, 901 P.2d 668, 670 n. 1 (1995).
[5] Given our disposition of this appeal, we need not address Washington's remaining contentions.

The Honorable Thomas L. Steffen, Chief Justice, did not participate in the decision of this appeal.