OPINION
By the Court, Becker, C. J.:
Appellant Jose Gaxiola was charged with and convicted of five counts of sexual assault of a minor under the age of fourteen years and two counts of lewdness with a child under the age of fourteen years. On appeal, he asserts the following assignments of error: (1) NRS 51.385, which allows admission of a child sexual assault victim’s statements to third parties, violates the Confrontation Clause of the United States Constitution;[1] (2) jury instructions stating that a sexual assault victim’s testimony need not be corroborated unduly emphasize one witness’s testimony; (3) one of his lewdness convictions violates the corpus delicti rule; (4) his lewdness convictions are redundant to the sexual assault convictions; and (5) multiple instances of prosecutorial misconduct.[2]
*642 We conclude that: (1) the admission of a child-victim’s statements to third parties pursuant to NRS 51.385 does not violate the Confrontation Clause when the child-victim testifies at trial; (2) the no-corroboration instruction was not improper; (3) one of the lewdness convictions violates the corpus delicti rule; (4) the remaining lewdness conviction was redundant; and (5) while some prosecutorial misconduct occurred, it did not rise to the level of plain error warranting reversal. Accordingly, we affirm the convictions for sexual assault and reverse the convictions for lewdness.

FACTS

Gaxiola was convicted of sexually assaulting a seven-year-old child related to him. Gaxiola was twenty-one years old at the time of the assaults.
During the summer of 2001, the child was to spend a week at his relatives’ home. Two adults, another minor child (E.G.), and Gaxiola resided in the home. E.G., who was related to the child-victim, agreed to babysit the child for the week.
The child, who was nine years old at the time of the trial, testified that Gaxiola sexually assaulted him during his first or second night at the house. The child testified that he and E.G. were asleep in E.G.’s room when Gaxiola came and got him. E.G. did not wake up. Gaxiola called it a game, enticing the child with a promise to allow him to play video games in the morning. The child accompanied Gaxiola to Gaxiola’s room and Gaxiola closed the door.
According to the child, Gaxiola had the child perform fellatio on him. Gaxiola then had the child lie down on his side, and Gaxiola lay down behind him. Gaxiola anally penetrated the child. The child testified that the first time Gaxiola anally penetrated him it hurt, but the second time Gaxiola went slowly and it did not hurt. The child clearly stated that the anal penetration occurred on two different occasions, but he was not certain if both occurrences happened that night. After Gaxiola anally penetrated the child, Gaxi-ola put his penis in the child’s mouth. At trial, the child stated that he thought Gaxiola touched the child’s penis with Gaxiola’s hand, however the child did not give any specifics of when and how this occurred in relation to the other sexual activities.
E.G. and Gaxiola relayed a very different account of that night. E.G. testified that she did not sleep at all that night and that the child only left the room to use the bathroom. When the child did not return from the bathroom within five minutes, E.G. went to *643 check on him. E.G. discovered the child in Gaxiola’s room, lying on the bed next to Gaxiola and asking to play video games. When Gaxiola refused to allow the child to play, he became upset, and E.G. returned him to her room.
Gaxiola testified that he called the child’s mother the next day to come and pick up the child. Gaxiola claimed that the child said something gross or nasty the night before and Gaxiola did not want him in the house. The child’s mother denied that Gaxiola called her. She and her sister stated that when they went by the house to drop off some clothes for the child, the child came out of the house and said that he did not want to stay there any longer.
In August 2001, while the child was staying at his aunt’s house, he told his young cousins that he had sex with Gaxiola. The next morning, one of the cousins told the child’s uncle about the incident. He initiated a discussion with the child regarding the comment. The child became very emotional and eventually relayed the events of the night at E.G.’s house. The child said that Gaxiola made him perform fellatio on Gaxiola, Gaxiola rubbed the child’s penis, and Gaxiola anally penetrated the child. The child claimed that Gaxiola also put the child’s penis in his mouth. When asked whether it had only occurred the one time, the child responded that it had been ongoing. The child stated that he had not told anyone because Gaxiola threatened that if he told, the child would go to the devil.
The uncle informed the child’s mother about the discussion, and she questioned the child. She testified that the child told her that Gaxiola put his penis in the child’s mouth, put the child’s penis in his mouth, and anally penetrated the child. The child’s mother then called the police.
Phyllis Suiter, a board certified pediatric and family nurse practitioner from the SAINT (Sexual Abuse Investigative Team) program, interviewed and examined the child. The child stated that Gaxiola touched and caressed the child’s penis with his hand. The child claimed that Gaxiola anally penetrated him two different times. The child stated the first time was a long time ago and that the first time hurt, but the second time did not. The child stated that Gaxiola put the child’s penis in his mouth two different times, but not the same time Gaxiola anally penetrated him. Gaxiola made the child put Gaxiola’s penis in his mouth one time.
During the physical examination, Suiter found anal injuries. Suiter discovered that the child’s inner sphincter was dilated. Further, she discovered scar tissue from a second-degree injury. The scarring indicated that the injury was approximately one to two months old. Suiter examined the child a second time approximately two weeks later to evaluate the appearance of the scarring after the passage of time. Suiter concluded that it was consistent *644 with her earlier findings. Suiter testified that the child’s injuries were consistent with the allegations and made a determination that abuse was probable.
The police also interviewed the child. Detective Gina Chandler testified that the child stated that Gaxiola rubbed the child’s penis, anally penetrated him twice, put his penis in the child’s mouth, and put the child’s penis in his mouth two times.
Subsequently, Gaxiola consented to a police interview. Gaxiola told the police that the child frequently exhibited inappropriate sexual behavior. Originally, Gaxiola told the police that the only sexual contact between him and the child was when the child attempted to touch Gaxiola’s penis through his pants. Gaxiola claimed that he told the child not to do that and he informed the child’s mother, but she just laughed. Gaxiola told the detectives that he was willing to take a lie detector test.
As the interview progressed, Gaxiola changed his story. He claimed that the child had come into his room when he was asleep, took Gaxiola’s penis from his boxers, and touched it. Gaxiola stated that another time the child came into his room when he was asleep, removed Gaxiola’s penis from his boxers, and put it in the child’s mouth. Gaxiola told the detectives that the child laid down in front of Gaxiola while Gaxiola was sleeping on his side, reached around and put Gaxiola’s penis in the child’s anus. When the detectives asked how Gaxiola became aroused to enable this act, he stated that every guy gets hard when he sleeps. Gaxiola stated that he woke up before ejaculating. Gaxiola denied any other incidents of anal penetration. Gaxiola stated that the child attempted to put his penis in Gaxiola’s mouth a couple of times while Gaxiola was asleep, but Gaxiola woke up when he felt something against his lips and stopped the child. Gaxiola was arrested approximately 1 Vi months after the interview.
Gaxiola was charged with seven counts. Counts one and two were for sexual assault by Gaxiola committing fellatio upon the child. Count three was for sexual assault by Gaxiola placing his penis in the child’s mouth. Counts four and five were for sexual assault by Gaxiola inserting his penis into the child’s anal opening. Count six was for lewdness based on Gaxiola fondling the child’s penis. Count seven was for lewdness based on making the child fondle Gaxiola’s penis.
At the beginning of the trial, outside the jury’s presence, the State told the court that it planned to have the child’s mother and uncle testify regarding the child’s statements. The State and the defense agreed that it was not necessary to have a hearing as required by NRS 51.385 since the child was going to testify. The district court stated that admission of the statements was predicated on the child testifying.
*645 At trial, Gaxiola stated that he never touched the child. Gaxiola testified that he only told a different story to the police because he was willing to say anything to go home because the police were threatening and intimidating him. Gaxiola testified that he was able to provide so many details that were consistent with the child’s story because the child’s mother had told the details to his mother, who then relayed them to him.
The jury found Gaxiola guilty on all of the counts, and the district court entered a judgment of conviction. For the sexual assault convictions, Gaxiola was sentenced to serve five concurrent life sentences with the possibility of parole in twenty years. For the lewdness convictions, Gaxiola was sentenced to serve two life sentences with the possibility of parole in ten years. One of the lewdness sentences is to run concurrently with the sexual assault sentences and the other is to run consecutively.

DISCUSSION

Gaxiola contends that: (1) NRS 51.385 violates the Confrontation Clause of the Sixth Amendment of the United States Constitution, (2) the district court erred by instructing the jury that a sexual assault victim’s uncorroborated testimony could sustain a guilty verdict, (3) one of his lewdness convictions should be reversed because it violates the corpus delicti rule, (4) his lewdness convictions are redundant to the sexual assault convictions, and (5) the prosecutor committed multiple acts constituting prosecutorial misconduct.

Constitutionality of NRS 51.385

Gaxiola asserts that his right to confrontation was violated when the district court admitted testimony about the child-victim’s statements to his mother, his uncle, Suiter and Detective Chandler. Gaxiola argues that NRS 51.385[3] violates the Confrontation Clause of the Sixth Amendment of the United States Constitution and the United States Supreme Court’s recent decision in Crawford v. *646 Washington.[4] The State counters that the Confrontation Clause and the Crawford decision do not bar admission of the statements so long as the declarant is present at trial to defend or explain the statement. We agree with the State.
The Confrontation Clause of the Sixth Amendment states, ‘ ‘In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him . . . .”[5] In Crawford, the Supreme Court held that extrajudicial testimonial statements by a witness are barred under the Confrontation Clause unless the defendant had a prior opportunity to cross-examine the witness,[6] thereby rejecting the test it had previously established in Ohio v. Roberts.[7] However, “Crawford does not overrule the Court’s pre-existing Confrontation Clause jurisprudence, enunciated in Ohio v. Roberts, and its progeny, as it applies to nontesti-monial statements.’ ’[8]
The Court was also careful to explain that, “when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.”[9] The Court stated that the Confrontation Clause “does not bar admission of a statement so long as the declarant is present at trial to defend or explain it.”[10]
In this case, the child testified at the trial and was subject to cross-examination. Based on these circumstances, we conclude that Crawford is not implicated.[11]
Gaxiola also argues that in People v. Price[12] the California Court of Appeal held that, under the Confrontation Clause, a defendant must have a prior opportunity to cross-examine the declarant before the declarant’s extrajudicial statements may be admitted. Gaxiola argues that he did not have a prior opportunity to cross-examine the child because the child testified after the statements were admitted. The State claims that Price is distinguishable because it concerned an unavailable declarant.
*647 We conclude that Gaxiola’s argument is without merit. In Price, the court held that the Confrontation Clause was not violated when statements from an unavailable declarant were admitted at trial because the defendant not only had the opportunity to cross-examine her at the preliminary hearing, but he vigorously did so and presented that transcript in support of his defense.[13] Price does not support Gaxiola’s argument that the declarant’s statement is only admissible after the declarant testifies at trial.[14]
Accordingly, we conclude that NRS 51.385, as applied to the specific facts of this case, does not violate the Confrontation Clause.[15]

“No corroboration” jury instruction

Gaxiola contends that the district court erred by instructing the jury as follows:
There is no requirement that the testimony of a victim of sexual offenses be corroborated, and his testimony standing alone, if believed beyond a reasonable doubt, is sufficient to sustain a verdict of guilty.
Gaxiola contends that the instruction is problematic because: (1) it unfairly focuses the jury’s attention on and highlights a single witness’s testimony, as did the “Lord Hale” instruction that was deemed improper in Turner v. State;[16] (2) it presents a concept used in appellate review that is irrelevant to a jury’s function as fact-finder; and (3) the technical term of “uncorroborated,” implied by the instruction, misleads and confuses the jury because it has several alternative definitions.
The State counters that appellate review is precluded because Gaxiola did not object to this instruction at trial. Further, the State contends that this court, along with several other courts, has *648 approved of this instruction and that because courts across the nation are split on the issue, any error was not plain at the time the instruction was given and reversal thus is not appropriate.
Generally, the failure to clearly object on the record to a jury instruction precludes appellate review. However, this court has the discretion to address an error if it was plain and affected the defendant’s substantial rights. In conducting plain error review, we must examine whether there was error, whether the error was plain or clear, and whether the error affected the defendant’s substantial rights.[17]
“For an error to be plain, it must, ‘at a minimum,’ be ‘clear under current law.’ ”[18]
This court has repeatedly stated that the uncorroborated testimony of a victim, without more, is sufficient to uphold a rape conviction.[19] Furthermore, other courts have approved jury instructions to that effect.[20] Moreover, we conclude that the instruction is significantly different from a “Lord Hale” instruction. “Lord Hale” instructions amount to a commentary on the evidence, by telling a jury that a category of witness testimony should be given greater scrutiny. A “no corroboration” instruction does not tell the jury to give a victim’s testimony greater weight, it simply informs the jury that corroboration is not required by law.
*649 The California Supreme Court discussed this distinction in People v. Gammage.[21] The court considered the propriety of a “no corroboration” instruction and a “Lord Hale” instruction. The court concluded that while the “Lord Hale” instruction was improper, it was appropriate to continue giving the “no corroboration” instruction since it performs an important role.[22] “Although the historical imbalance between victim and accused in sexual assault prosecutions has been partially redressed in recent years, there remains a continuing vitality in instructing juries that there is no legal requirement of corroboration.”[23] The court explained that the reasonable doubt standard places a ‘ ‘heavy burden of persuasion on a complaining witness whose testimony is uncorroborated” and that while the “no corroboration” instruction does not affect that standard, all of the instructions together strike a balance that “ ‘protects the rights of both the defendant and the complaining witness.’ ”[24]
Similarly, the Court of Appeals of Michigan also approved the use of a “no corroboration” instruction in People v. Smith.[25] In Smith, defense counsel had argued to the jury that, because of the strength of the defendant’s alibi, it should insist on corroborating evidence. The court of appeals stated that, under those circumstances, the trial court properly instructed the jury that it could convict the defendant of sexual conduct on the basis of the alleged victim’s uncorroborated testimony.[26]
Gaxiola argues that we approved the combined use of a “Lord Hale” instruction and two “no corroboration” instructions in May v. State.[27] However, May only states that the instructions concerning corroboration correctly stated the law and that it was not error to give them to the jury.[28] May does not suggest that the use of combined instructions is required or approved of in sexual assault cases, and Turner subsequently disapproved of the “Lord Hale” instruction.
We conclude that the district court did not err by giving the “no corroboration” instruction. The instruction is a correct statement of Nevada law. Further, we agree with the Supreme Court of California in that the instruction does not unduly focus the jury’s at *650 tention on the victim’s testimony. Jurors mistakenly assume that they cannot base their decision on one witness’s testimony even if the testimony establishes every material element of the crime. Therefore, it is appropriate for the district court to instruct the jurors that it is sufficient to base their decision on the alleged victim’s uncorroborated testimony as long as the testimony establishes all of the material elements of the crime.
Corpus delicti rule (count seven — lewdness)
Gaxiola argues that there is insufficient evidence to support count seven (child fondling Gaxiola’s penis) because the only evidence supporting the charge was Gaxiola’s statement to the police, which he recanted at trial. Gaxiola contends that the conviction violates the corpus delicti rule.
“The question for the reviewing court ‘is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.’”[29] The jury determines the weight and credibility to give conflicting testimony.[30] “The corpus delicti of a crime must be proven independently of the defendant’s extrajudicial admissions.’ ’[31]
“The independent proof may be circumstantial evidence . . . , and it need not be beyond a reasonable doubt. A slight or prima facie showing, permitting the reasonable inference that a crime was committed, is sufficient. If the independent proof meets this threshold requirement, the accused’s admissions may then be considered to strengthen the case on all issues.”[32]
Gaxiola told the police that the child would come up to him and touch Gaxiola’s penis through his boxer shorts, but Gaxiola recanted this statement at trial, and the child did not testify that Gax-iola made him touch Gaxiola’s penis. Further, none of the witnesses testified that the child said that Gaxiola made him touch Gaxiola’s penis. During the police interview, the police asked the child whether he performed this act, but the transcripts indicate *651 that the child’s responses were not audible and it is impossible to tell what those responses were. Accordingly, there is no evidence, outside of Gaxiola’s police interview statement, that this act occurred. Thus, Gaxiola’s conviction on count seven violates the corpus delicti rule, and we reverse the conviction.

Redundancy of the lewdness convictions

Gaxiola contends that this court should reverse the two lewdness convictions since the conduct was a mere prelude to the sexual assaults. Since we disposed of count seven above, it is not necessary for us to reach the issue of whether that conviction is redundant. Therefore, we will only address whether count six (lewdness by Gaxiola fondling the child’s penis) is redundant to the sexual assault convictions.
The State contends that charges for sexual assault and lewdness may be sustained even when they occur in a single encounter, unless the lewdness occurred incidental to the sexual assault. The State contends that due to the child’s age, it is almost impossible to pinpoint the timing and sequence of events; nevertheless, the child testified to repeated acts of abuse occurring over a period of time.
“The crimes of sexual assault and lewdness are mutually exclusive and convictions for both based upon a single act cannot stand.”[33] However, separate and distinct acts of sexual assault may be charged as separate counts and result in separate convictions “even though the acts were the result of a single encounter and all occurred within a relatively short time.”[34]
This court has considered the redundancy of a lewdness conviction to a sexual assault conviction in several cases. In Wright v. State, the accused attempted to sexually assault the victim but stopped when a car passed by the area of the assault.[35] After the car passed, the accused resumed his assault.[36] This court affirmed convictions for both attempted sexual assault and sexual assault despite the short time period between the acts.[37] In Townsend v. *652 State, this court affirmed separate convictions for fondling a victim’s breasts and digitally penetrating the victim’s vagina.[38] This court stated that because ‘ ‘Townsend stopped [fondling the child’s breasts] before proceeding further,” separate acts of lewdness occurred.[39]
However, in Crowley v. State, the defendant rubbed the victim’s penis through the victim’s pants, put his hand inside the victim’s underwear and touched the victim’s penis, and pulled down the victim’s pants and performed fellatio on the victim.[40] This court reversed Crowley’s conviction for lewdness, explaining that unlike Wright and Townsend, Crowley never interrupted his actions.[41] “By touching and rubbing the male victim’s penis, Crowley sought to arouse the victim and create willingness to engage in sexual conduct. Crowley’s actions were not separate and distinct; they were a part of the same episode.”[42] In Ebeling v. State, this court reversed Ebeling’s conviction for lewdness after determining that the touching of Ebeling’s penis on the victim’s buttocks was incidental to the sexual assault by anal penetration.[43]
In this case, it is impossible to determine whether the lewdness was incidental to the sexual assault because the child did not testify regarding the sequence of events. We cannot tell from the child’s testimony whether the touching was separate and distinct as in Wright and Townsend or a continuous act merged with a sexual assault as in Crowley and Ebeling.
The State argues that, due to the child’s age and the difficulties of relying on a victim under the age of ten, this court should apply the rule of Cunningham v. State, where we held that, because time is not an essential element of sexual assault, attempted sexual assault or lewdness with a minor, it is not necessary to allege the exact date; a time frame is appropriate.[44] In addition, the State cites to People v. Jones,[45] where the California Supreme Court wrote, “It must be remembered that even generic testimony . . . outlines a series of specific, albeit undifferentiated, incidents each of which amounts to a separate offense, and each of which could support a separate criminal sanction.” The California court held that a conviction would be sustained so long as a victim is able to de *653 scribe the kind of act committed, the number of acts committed and the general time period in which they were committed.
However, neither Cunningham nor Jones addresses the issue of redundancy. Cunningham and Jones are sufficiency of the evidence cases. These cases acknowledge that child-victims have more difficulty being as precise about times, places and details, but they do not relieve the prosecution of its duty to provide enough detail so that the elements of the crime are proven beyond a reasonable doubt. If we apply the same rationale to a redundancy analysis, no lewdness conviction would ever be redundant.
The wording of NRS 201.230, Nevada’s lewdness statute, further supports our analysis. NRS 201.230(1) defines lewdness as “any lewd or lascivious act, other than acts constituting the crime of sexual assault.” (Emphasis added.) The State has the burden to show that the defendant committed a crime[46] and in the case of lewdness, the statute indicates that part of this burden is to show that the lewdness was an act other than a sexual assault. Therefore, we conclude that the State has the burden, at trial, to show that the lewdness was not incidental to the sexual assault. In this case, the State failed to present any evidence regarding the sequence of events and under what circumstances the lewdness occurred. The child only indicated Gaxiola fondled the child’s penis. The child did not indicate if this occurred on a separate day or time frame from the child’s statement that Gaxiola placed the child’s penis in Gaxiola’s mouth. Accordingly, we conclude that the State failed to prove that Gaxiola’s lewdness conviction for touching the child’s penis is not redundant to the sexual assault conviction involving fellatio performed upon the child, and the lewdness conviction must be vacated.

Prosecutorial misconduct

Gaxiola raises several alleged incidents of prosecutorial misconduct.[47] However, Gaxiola failed to object to the alleged incidents at trial. Therefore, we analyze his contentions under the plain error rule.
*654 This court has long held that, as a general rule, the failure to make timely objections [to prosecutorial misconduct] and to seek corrective instructions during trial [precludes appellate consideration]. But we may consider sua sponte plain error which affects the defendant’s substantial rights, if the error either: (1) had a prejudicial impact on the verdict when viewed in context of the trial as a whole, or (2) seriously affects the integrity or public reputation of the judicial proceedings.
The level of misconduct necessary to reverse a conviction depends upon how strong and convincing is the evidence of guilt. If the issue of guilt or innocence is close, if the state’s case is not strong, prosecutor misconduct will probably be considered prejudicial.[48]
First, Gaxiola contends that the prosecutor committed misconduct when he asked E.G. if someone said that she had said she would lie for Gaxiola, would they be lying? Gaxiola argues that it is improper to ask one witness if another witness was lying.
This court considered this issue for the first time in Daniel v. State,[49] which was decided after Gaxiola’s trial concluded. In Daniel, this court adopted “a rule prohibiting prosecutors from asking a defendant whether other witnesses have lied or from goading a defendant to accuse other witnesses of lying, except where the defendant during direct examination has directly challenged the truthfulness of those witnesses.”[50] In that case, this court employed a harmless error review since the defense had objected to the question at trial.[51] However, this court noted that, because we had never adopted a rule, the prosecutor did not act with wrongful intent and the error was not prejudicial.[52]
In this case, the prosecutor improperly asked the witness if another witness was lying. However, as in Daniel, we conclude that the prosecutor did not act with wrongful intent and the error did not affect Gaxiola’s substantial rights.[53]
Second, Gaxiola alleges that the prosecutor committed misconduct by asking questions about his post-arrest silence. At trial, the *655 prosecutor attempted to use Gaxiola’s interview statements to impeach his trial testimony. Gaxiola maintained that he had lied during the police interview but that he was telling the truth on the stand. The prosecutor then asked Gaxiola whether he called the police when he got home after the interview to tell them he lied, whether he called them in the month-and-a-half after the interview and before he was arrested to recant, and whether he told them after his arrest that he had made up the story.
On appeal, Gaxiola argues that the last question constituted an unconstitutional comment on his post-arrest silence. Gaxiola also contends that the prosecutor’s comments regarding his failure to recant after arrest in closing statements infringed upon his rights to post-arrest silence.
“It is well settled that the prosecution is forbidden at trial to comment upon an accused’s election to remain silent following his arrest and after he has been advised of his rights . . . ,”[54] In Doyle v. Ohio, the Supreme Court concluded that a prosecutor violated a defendant’s right to remain silent by cross-examining the defendant as to why he did not tell the police upon being arrested that he had been set up.[55] The Court wrote, “Silence in the wake of [Miranda] warnings may be nothing more than the arrestee’s exercise of these Miranda rights.”[56] “In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person’s silence to be used to impeach an explanation subsequently offered at trial.”[57] However,
Doyle does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving Miranda warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all.[58]
Finally, “[t]his court will not reverse a conviction when the state comments on post-arrest silence if the comments were harmless beyond a reasonable doubt. However, comments on post-arrest silence are not harmless in cases which rest ‘solely on the defendant’s word versus the victim’s word.’ ”[59]
*656 In this case, the prosecutor’s question and argument regarding Gaxiola’s failure to recant his interview after arrest was an improper comment on post-arrest silence. After being arrested, Gax-iola had the right to remain silent and not talk to the police about his case.[60] However, the prosecutor’s questions regarding Gaxiola’s failure to change his statement in the month-and-a-half prior to his arrest were permissible.
The fact that Gaxiola had plenty of time to correct his statement prior to trial was already before the jury. In addition, this is not a case based solely on the victim’s word; physical evidence also established anal penetration.[61] Accordingly, we conclude that the misconduct does not constitute plain error because it did not affect Gaxiola’s substantial rights.

CONCLUSION

We conclude that the admission of the child’s statements to third parties did not violate Gaxiola’s right to confrontation since the child testified at trial. We also conclude that the district court did not err by instructing the jury that a sexual assault victim’s testimony does not have to be corroborated to sustain a guilty verdict and that any acts of prosecutorial misconduct did not affect Gaxi-ola’s substantial rights. Finally, we conclude that Gaxiola’s lewdness conviction for count six is redundant to the sexual assault convictions and that the lewdness conviction for count seven violates the corpus delicti rule.
Accordingly, we affirm Gaxiola’s convictions for sexual assault and reverse his lewdness convictions.
Parraguirre, J., concurs.

U.S. Const, amend. VI.

Gaxiola also argues: (1) the district court erred in refusing to grant a mistrial based upon an unsolicited witness reference to possible bad acts occurring *642 in California, (2) the district court abused its discretion by refusing to allow him to obtain a psychological examination of the child-victim, and (3) the district court abused its discretion by denying Gaxiola’s motion to strike his statement to the police. We have considered these arguments and conclude they are without merit.

NRS 51.385(1) states:
1. In addition to any other provision for admissibility made by statute or rule of court, a statement made by a child under the age of 10 years describing any act of sexual conduct performed with or on the child or any act of physical abuse of the child is admissible in a criminal proceeding regarding that act of sexual conduct or physical abuse if:
(a) The court finds, in a hearing out of the presence of the jury, that the time, content and circumstances of the statement provide sufficient circumstantial guarantees of trustworthiness; and
(b) The child testifies at the proceeding or is unavailable or unable to testify.

 541 U.S. 36 (2004).

U.S. Const, amend. VI. The Confrontation Clause applies to the states by way of the Due Process Clause of the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 403 (1965).

 541 U.S. at 68.

 448 U.S. 56, 66 (1980) (holding that the admissibility of all hearsay evidence is conditioned on whether it falls under a firmly rooted hearsay exception or bears “particularized guarantees of trustworthiness”).

U.S. v. McClain, 377 F.3d 219, 221 n.1 (2d Cir. 2004) (citation omitted).

Crawford, 541 U.S. at 60 n.9.

Id.

For this reason, we do not address whether all of the child’s statements were testimonial in nature or the constitutionality of the statute in situations where a child is unable or unavailable to testify.

 15 Cal. Rptr. 3d 229 (Ct. App. 2004).

Id. at 239.

Cf. California v. Green, 399 U.S. 149, 157 (1970) (the “literal right to ‘confront’ the witness at the time of trial . . . forms the core of the values furthered by the Confrontation Clause”).

Gaxiola also argues that his conviction should be reversed because the district court failed to hold a hearing pursuant to NRS 51.385 before admitting the child’s statements to the third parties. We do not reach this issue because Gaxiola waived it below.

 111 Nev. 403, 403-04, 892 P.2d 579, 579 (1995). The “Lord Hale” instruction provided:
A charge such as that made against the defendant in this case is one, which, generally speaking, is easily made, and once made, difficult to disprove even if the defendant is innocent. From the nature of a case *648 such as this, the complaining witness and the defendant are usually the only witnesses. Therefore, the prosecuting witness^] testimony should be examined with caution.

Id.

 Green v. State, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003) (internal quotation marks omitted) (footnotes omitted); see also NRS 178.602.

U.S. v. Weintraub, 273 F.3d 139, 152 (2d Cir. 2001) (quoting U.S. v. Feliciano, 223 F.3d 102, 115 (2d Cir. 2000)).

State v. Gomes, 112 Nev. 1473, 1481, 930 P.2d 701, 706 (1996); Washington v. State, 112 Nev. 1067, 1073, 922 P.2d 547, 551 (1996); Hutchins v. State, 110 Nev. 103, 109, 867 P.2d 1136, 1140 (1994); Rembert v. State, 104 Nev. 680, 681, 766 P.2d 890, 891 (1988); Deeds v. State, 97 Nev. 216, 217, 626 P.2d 271, 272 (1981); Henderson v. State, 95 Nev. 324, 326, 594 P.2d 712, 713 (1979); Bennett v. Leypoldt, 77 Nev. 429, 432, 366 P.2d 343, 345 (1961); Martinez v. State, 77 Nev. 184, 189, 360 P.2d 836, 838 (1961); State v. Diamond, 50 Nev. 433, 437, 264 P. 697, 698 (1928).

State v. Dukette, 444 A.2d 547, 549 (N.H. 1982) (stating that the trial judge did not abuse its discretion by instructing the jury, immediately after the victim testified that there were no eyewitnesses to the sexual assault and the defendant did not achieve sexual emission, that no corroboration of the alleged victim’s testimony is necessary to convict); Stallworth v. State, 258 S.E.2d 611, 612 (Ga. Ct. App. 1979) (rejecting defendant’s argument that the trial court failed to fairly explain the requirement of corroboration because there is no requirement of corroboration of victim’s testimony in a rape case, and trial court properly instructed jury on that issue).

 828 P.2d 682 (Cal. 1992).

Id. at 687.

Id. (citation omitted).

Id. (citation omitted).

 385 N.W.2d 654, 657 (Mich. Ct. App. 1986).

Id.

 89 Nev. 277, 278-79, 510 P.2d 1368, 1369 (1973), overruled by Turner, 111 Nev. at 404, 892 P.2d at 580.

Id. at 279, 510 P.2d at 1369.

Mason v. State, 118 Nev. 554, 559, 51 P.3d 521, 524 (2002) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

Deeds v. State, 97 Nev. 216, 217, 626 P.2d 271, 272 (1981).

Doyle v. State, 112 Nev. 879, 892, 921 P.2d 901, 910 (1996), overruled on other grounds by Kaczmarek v. State, 120 Nev. 314, 333, 91 P.3d 16, 29 (2004).

Id. (quoting People v. Alcala, 685 P.2d 1126, 1136 (Cal. 1984) (citations omitted)).

Braunstein v. State, 118 Nev. 68, 79, 40 P.3d 413, 421 (2002).

Wright v. State, 106 Nev. 647, 650, 799 P.2d 548, 549-50 (1990).

Id. at 650, 799 P.2d at 549.

Id.

Id. at 650, 799 P.2d at 549-50; see also Wicker v. State, 95 Nev. 804, 806, 603 P.2d 265, 267 (1979) (explaining that, statutorily, the accused performed separate acts and could be convicted of a separate offense for each act notwithstanding the short period of time between acts).

 103 Nev. 113, 121, 734 P.2d 705, 710 (1987).

Id.

 120 Nev. 30, 34, 83 P.3d 282, 285 (2004).

Id. at 34, 83 P.3d at 285-86.

Id. at 34, 83 P.3d at 285.

 120 Nev. 401, 404, 91 P.3d 599, 601 (2004).

 100 Nev. 396, 400, 683 P.2d 500, 502 (1984).

 792 P.2d 643, 654 (Cal. 1990).

State v. Walker, 109 Nev. 683, 685, 857 P.2d 1, 2 (1993).

Only two are specifically addressed in this opinion. We have considered Gaxiola’s remaining arguments that the prosecutor acted improperly by: (1) offering his personal opinions, (2) misstating evidence regarding corroboration, (3) commenting on Gaxiola’s failure to take a polygraph in response to Gaxi-ola’s direct testimony regarding willingness to submit to a polygraph, (4) stating the child was a “good, credible kid,” and (5) discussing penalty or punishment. We conclude these arguments are without merit.

Rowland v. State, 118 Nev. 31, 38, 39 P.3d 114, 118-19 (2002) (internal quotations and citations omitted).

 119 Nev. 498, 78 P.3d 890 (2003).

Id. at 519, 78 P3d at 904.

Id.

Id.

NRS 178.602.

McGee v. State, 102 Nev. 458, 461, 725 P.2d 1215, 1217 (1986).

 426 U.S. 610 (1976).

Id. at 617.

Id. at 618.

Anderson v. Charles, 447 U.S. 404, 408 (1980).

Washington v. State, 112 Nev. 1054, 1060, 921 P.2d 1253, 1257 (1996) (quoting Coleman v. State, 111 Nev. 657, 664, 895 P.2d 653, 657-58 (1995)).

Miranda v. Arizona, 384 U.S. 436, 444 (1966).

See King v. State, 113 Nev. 454, 467-68, 937 P.2d 55, 63-64 (1997).