# IN THE SUPREME COURT OF THE STATE OF NEVADA

DWAYNE COREY HARDIN,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 72067

FILED

JUL 26 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of sexual assault of a minor under 14 years of age, 8 counts of lewdness with a child under 14 years of age, and coercion. Eighth Judicial District Court, Clark County; Jerry A. Wiese, Judge.

Appellant raises the following arguments in support of overturning his convictions. For the reasons explained below, we affirm the judgment of conviction.

*Miranda violation*

During a custodial interrogation, the following interaction between appellant and the interrogating detective took place immediately after appellant had been read his *Miranda*[1] rights:

Q: Do you understand all these rights?

A: Yes.

Q: Okay. Um, do you understand why we're here today?

A: Yes.

*Q: Okay. Do you want to talk to us?*

*A: No.*

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).

18-28849

*Q: No? So you just want to remain silent? Do you want an attorney? What's the deal?*

A: I don't know. I guess I'm getting arrested here.

Q: Well, that would be obvious given the situation, correct?

A: Yeah.

Q: I mean we'd like to give you an opportunity to talk to us if you want to. But you're entitled not to either. It's completely up to you. I can't give you legal advice but I can, you know, at least explain things to you. Okay?

A: Okay.

*Q: Um, now you say you don't want to talk to us. Do you want to answer any of our questions? Do you want to tell us what's going on?*

*A: I'll answer your question. What you got?*

(Emphases added.)

Appellant moved to suppress the ensuing statement that he made to the detective, which the district court denied, evidently based on the conclusion that appellant's "No" response to the detective's "Do you want to talk to us?" question was ambiguous.

Appellant contends that the district court clearly erred in denying his motion to suppress. *See Lamb v. State*, 127 Nev. 26, 31, 251 P.3d 700, 703 (2011) (reviewing a district court's legal conclusions de novo and its factual findings relating to a motion to suppress for clear error). In particular, appellant contends that the district court erred in permitting the State to use clarifying questions to create ambiguity in an otherwise unambiguous invocation of the right to remain silent. Appellant relies primarily on *Garcia v. Long*, 808 F.3d 771 (9th Cir. 2015). There, Garcia answered "No" to a detective's question, "do you wish to talk to me," but the detective continued to ask Garcia what he meant by "No," and Garcia

ultimately confessed to committing various crimes. *Id.* at 774. In affirming a federal district court's decision to grant Garcia's postconviction habeas petition based on the alleged *Miranda* violation, the United States Court of Appeals for the Ninth Circuit agreed that Garcia's "No" answer was an unambiguous invocation of the right to remain silent and that the detective's subsequent clarifying questions were improper. *See id.* at 780. In so doing, the Ninth Circuit observed that its conclusion was directly supported by United States Supreme Court precedent, stating that "if an officer seeks to clarify an unambiguous request and elicits an equivocal response, the suspect's postrequest statements 'may not be used to cast retrospective doubt on the clarity of the initial request itself.'" *Id.* at 777, (quoting *Smith v. Illinois*, 469 U.S. 91, 100 (1984)); *see also Berghuis v. Thompkins*, 560 U.S. 370, 381-82 (2010) (recognizing that a defendant must unambiguously invoke the right to remain silent and that a defendant can do so by stating he wishes to remain silent or stating he does not want to talk with the police).

We agree with appellant that this case is analogous to *Garcia* and conclude that the State's attempts to distinguish *Garcia* are meritless. First, the State argues that appellant's "No" answer should be considered within the overall context of the interrogation, including appellant's interaction with the detective prior to saying "No." While we do not disagree with that proposition in general, here, the detective read appellant his *Miranda* rights immediately after having introduced himself. Thus, there was no prior interaction with the detective that could have cast doubt on what appellant meant by "No."[2] Second, the State contends that the

---

[2]In this respect, the State's reliance on *Medina v. Singletary*, 59 F.3d 1095, 1104-05 (11th Cir. 1995), is unpersuasive.

detective should have been permitted to ask follow-up questions to clarify what appellant meant when he said "No" because the detective was unsure whether appellant was unwilling to talk outright or just unwilling to talk without an attorney. We disagree, as there is no objective ambiguity in appellant's "No" response to the detective's "Do you want to talk to us?" question. *See Berghuis*, 560 U.S. at 381 ("A requirement of an unambiguous invocation of *Miranda* rights results in an objective inquiry . . . ."). Accordingly, appellant's ensuing statement to the detective was made in violation of his *Miranda* rights, and the district court therefore erred in denying appellant's motion to suppress that statement.

Although appellant's statement to the detective was erroneously admitted at trial, we nevertheless conclude that the error was harmless beyond a reasonable doubt. *See Diomampo v. State*, 124 Nev. 414, 428, 185 P.3d 1031, 1040 (2008) ("In reviewing claims of nonstructural, constitutional error, . . . reversal is unwarranted if we conclude without reservation that the verdict would have been the same in the absence of error." (internal quotation marks omitted)). Most significantly, appellant did not provide any incriminating information in his statement other than to acknowledge that he drank alcohol on the night of the May 5, 2014, incident and did not remember what had happened in the victim's room beyond talking about her iPod. Moreover, appellant made the same acknowledgement to a responding officer before giving his custodial statement, and the responding officer testified at trial regarding appellant's acknowledgement. Thus, to the extent that appellant's custodial statement contained any evidence he believed was harmful to his case, that same evidence was properly admitted through the responding officer's testimony.

Additionally, the evidence of appellant's guilt was strong. Most notably, a forensic analyst testified that a swab taken from the victim's inner thigh contained a mixture of the victim's DNA and a significant amount of male DNA that was 27,000 times more likely to be appellant's DNA than that of another random male. The analyst also testified that it would not have been possible for that much male DNA to have been transferred simply by virtue of the male living in the same household as the victim. Moreover, appellant's reaction to being caught in the victim's room and his ensuing efforts to prevent a witness from calling 911 point strongly toward appellant's guilt. Finally, the victim's statements to the witness, responding officer, examining nurse, and the police detective regarding appellant's pattern of abuse were all largely consistent with her testimony at trial, which strongly suggests that (contrary to appellant's theory of defense) the victim had not simply fabricated the pattern of alleged abuse as part of a plan with the witness to retaliate against appellant.[3] Accordingly, we are confident that the erroneous introduction of appellant's custodial statement was harmless beyond a reasonable doubt.

*Jury instructions*

Appellant contends that the district court abused its discretion in giving two jury instructions and declining to give several jury instructions that appellant proffered. *See Hoagland v. State*, 126 Nev. 381, 384, 240 P.3d 1043, 1045 (2010) ("[A] district court has broad discretion to settle jury instructions, and we review that decision for an abuse of discretion or judicial error.").

---

[3]The victim's demeanor on the night of the incident also strongly suggests that she was not simply fabricating the pattern of alleged abuse.

At trial, the jury was instructed that the victim's testimony did not need to be corroborated and that her testimony, if believed beyond a reasonable doubt, was sufficient to sustain a guilty verdict. Appellant acknowledges that this court has approved of this instruction's use in *Gaxiola v. State*, 121 Nev. 638, 649-50, 119 P.3d 1225, 1233 (2005), but asks us to reconsider that decision. We decline to do so in the context of this case, as evidence beyond the victim's trial testimony supported the jury's verdict.

Over appellant's objection, the jury was also instructed that voluntary intoxication is not a defense to a general intent crime but is a defense to a specific intent crime. Appellant contends that this instruction may have suggested to the jury that he was conceding the allegations against him and trying to excuse them by suggesting he was intoxicated. In this respect, he contends that the State and the district court foisted a theory of defense on him that he was not pursuing. While we agree that it was improper to instruct the jury on a theory of defense that appellant was not actually pursuing, we conclude that any error here inured to appellant's benefit, as appellant's voluntary intoxication on May 5, 2014, would have been a defense to all the crimes he allegedly committed on that date. *See* NRS 207.190(1) (felony coercion is a specific intent crime); *State v. Catanio*, 120 Nev. 1030, 1036, 102 P.3d 588, 592 (2004) (stating that lewdness with a child under 14 years of age is a specific intent crime). Because the jury convicted appellant of the May 5, 2014, crimes, it necessarily follows that the jury did not believe appellant was intoxicated on that night.

Appellant also proffered several instructions that the district court rejected. We conclude that the district court was within its discretion in declining to give the first proffered instruction (the two-reasonable-explanations instruction) based on *Bails v. State*, 92 Nev. 95, 97-98, 545

P.2d 1155, 1156 (1976), which held that appellant's proffered instruction is unnecessary when the jury is properly instructed on reasonable doubt. We decline appellant's invitation to reconsider *Bails* and note that to the extent appellant's proffered instruction implicates the reasonable doubt standard, it may be statutorily prohibited. *See* NRS 175.211(2) (declaring that no other definition of reasonable doubt may be given to the jury other than the definition provided in subsection 1, which was the definition given to the jury in this case).

We also conclude that the district court was within its discretion in declining to give appellant's second and third proffered instructions (the reliable-indicia and testify-with-particularity instructions) based on *Rose v. State*, 123 Nev. 194, 204-05, 163 P.3d 408, 415-16 (2007). In *Rose*, this court recognized that the refusal to give an instruction similar to those proffered by appellant was not an abuse of discretion when the proffered instruction was sufficiently covered by other instructions regarding the State's burden of proof and the reasonable doubt standard. *See id.* Here, as in *Rose*, appellant's proffered instructions were sufficiently covered by Instructions 5 and 13, and similar to *Rose*, the victim testified that appellant abused her once or twice per month starting around the time appellant lost his job. Thus, we are not persuaded that the district court abused its discretion in declining to give appellant's proffered instructions.

Appellant's remaining proffered instructions were "inverse instructions," in that they sought to inform the jury that it was required to acquit appellant of the charged crimes if the State failed to prove appellant's guilt beyond a reasonable doubt. We agree with appellant that the district court abused its discretion in declining to give those instructions based on *Crawford v. State*, 121 Nev. 744, 753, 121 P.3d 582, 588 (2005), which

observed that "this court has consistently recognized that specific jury instructions that remind jurors that they may not convict the defendant if proof of a particular element is lacking should be given upon request." However, as in *Crawford*, we conclude that the error was harmless because the jury was properly instructed on reasonable doubt and the elements of the charged crimes.[4] *See id.* at 756, 121 P.3d at 590.

*Alleged Brady violation*

Appellant contends that the district court abused its discretion by not declaring a mistrial because the State withheld *Brady*[5] evidence in the form of a witness's prior inconsistent statement. *See Ledbetter v. State*, 122 Nev. 252, 264, 129 P.3d 671, 680 (2006) ("The decision to deny a motion for a mistrial rests within the district court's discretion . . . ."). Having considered the identified evidence, we are not persuaded that the State committed a *Brady* violation, as the identified statement was not "material." *See Lay v. State*, 116 Nev. 1185, 1194, 14 P.3d 1256, 1262 (2000) (recognizing that evidence is "material" for *Brady* purposes "if there is a reasonable probability that the result would have been different if the evidence had been disclosed"). Here, the identified statement was inculpatory and did not directly pertain to any of the charges against appellant. Nor was the statement necessarily inconsistent with the witness's prior statement to police detectives or with the victim's testimony

_____

[4]We recognize that *Crawford*'s observation regarding a defendant's right to an inverse instruction is essentially unenforceable if harmless-error review applies. At the same time, however, we are not prepared to hold that a failure to provide a requested inverse instruction automatically warrants reversal of a defendant's conviction.

[5]*Brady v. Maryland*, 373 U.S. 83 (1963).

such that it clearly could have been used for impeachment purposes. While the record is less than clear regarding the State's candor toward appellant in relation to the identified statement, we are not persuaded that the statement constituted *Brady* evidence. *Id.* Accordingly, we conclude that the district court was within its discretion in denying appellant's request for a mistrial.

*Testimony regarding appellant's incarceration*

Appellant also contends that the district court should have declared a mistrial because a detective testified that he had listened to "jail calls with [appellant]." While this testimony was improper, *see Haywood v. State*, 107 Nev. 285, 288, 809 P.2d 1272, 1273 (1991), we conclude that it was harmless. The testimony was provided in response to a question from appellant's counsel and was isolated to the point where even appellant's counsel acknowledged that she was unsure whether the jurors heard it. And as the State points out, even if the jurors did hear it, they could have assumed that appellant made the "jail calls" while he was in custody on the night of his interrogation rather than at some later time. Accordingly, we conclude that the testimony was harmless and the district court did not abuse its discretion by denying appellant's motion for a mistrial. *Cf. Collman v. State*, 116 Nev. 687, 705, 7 P.3d 426, 438 (2000) (factoring into a harmless-error review whether the reference to a defendant's incarcerated status was (1) elicited by the prosecution or defense, (2) isolated, and (3) in the midst of a long trial).

*Cumulative error*

Appellant finally contends that cumulative error warrants reversal. "When evaluating a claim of cumulative error, we consider the following factors: (1) whether the issue of guilt is close, (2) the quantity and

SUPREME COURT
OF
NEVADA

(O) 1947A

character of the error, and (3) the gravity of the crime charged." *Valdez v. State*, 124 Nev. 1172, 1195, 196 P.3d 465, 481 (2008) (internal quotation marks omitted). Here, although appellant was convicted of severe crimes, we conclude that the issue of guilt was not close and that the quantity and character of the errors were not significant. With respect to whether guilt was close, the DNA evidence, appellant's reaction to being caught in the victim's room, and the victim's relative consistency in her statements leading up to her trial testimony are strong evidence of appellant's guilt.

With respect to the quantity and character of the errors, the errors we have identified were the admission of appellant's custodial statement, the giving of a voluntary intoxication instruction, the refusal to give appellant's proffered inverse instructions, and the detective's testimony regarding jail calls. As explained previously, the degree of prejudice appellant experienced by each of these first three errors was minimal to nonexistent, and the degree of prejudice appellant experienced by the fourth error was minimal. Given the aforementioned evidence of appellant's guilt, we are not persuaded that the cumulative effect of these errors deprived appellant of a fair trial. *See id.* ("The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though errors are harmless individually.") Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Parraguirre

_____, J.
Stiglich

cc: Clark County Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A

CHERRY, J., dissenting:

Since the district court erred in admitting appellant's custodial statement and the detective improperly referred to appellant's pretrial incarceration, I would reverse appellant's conviction.

For this reason, I respectfully dissent.

_____, J.
Cherry