TYRONE RANDOLPH DENSON, Appellant, v.
THE STATE OF NEVADA, Respondent.

No. 26581

April 30, 1996                                              915 P.2d 284

*Michael Specchio,* Public Defender, *John Reese Petty,* Chief Appellate Public Defender, Washoe County, for Appellant.

*Frankie Sue Del Papa,* Attorney General, Carson City; *Richard A. Gammick,* District Attorney, and *Gary H. Hatlestad,* Deputy, Washoe County, for Respondent.

# OPINION

*Per Curiam:*

Appellant Tyrone Randolph Denson ("Denson") agreed to plead guilty to two counts of burglary. During the sentencing hearing, the district court viewed a surveillance videotape that showed a series of incidents recorded by surveillance cameras at Harrah's, Reno ("Harrah's"). Seven of the eight incidents on the videotape showed Denson in Harrah's. The videotape was narrated by an employee of Harrah's security department. After viewing the videotape, the district court sentenced Denson. The district court's sentence included two five-year prison terms, one for each burglary charge to which Denson pleaded guilty. The

district court also directed that the two prison terms be served consecutively.

In this appeal, Denson contends that the district court improperly relied upon the surveillance videotape and the testimony of the Harrah's security officer in its sentencing decision. We conclude that the district court properly considered the videotape and properly allowed the security officer to narrate that videotape. Because the district court's sentence was intended to punish Denson for uncharged crimes, however, we vacate the district court's sentencing determination and remand this case to a different district judge for resentencing.

## FACTS

Denson was charged by information with five burglaries at five different casinos. During the preliminary hearing, testimony was heard from victims of the burglaries and from security officers at the five casinos. Subsequently, Denson agreed to plead guilty to two counts of burglary. The Parole and Probation Department ("PPD") recommended that Denson's sentence includes a six-year prison term for each burglary count to which Denson pleaded guilty. PPD also recommended that the sentences be served concurrently.

Over Denson's objection, the district court viewed a videotape offered by the prosecution during Denson's sentencing hearing. The videotape was prepared by Les Silva ("Silva"), a surveillance shift supervisor at Harrah's, from portions of surveillance tapes recorded at Harrah's. Also over Denson's objection, Silva narrated the videotape while it was played for the district court.

The first incident on the videotape showed Denson with another individual at Harrah's. Silva believed that Denson was working with the other individual to distract a casino customer in order to rob that customer. The videotape then showed a second incident in which Denson approached a casino customer from behind. Silva conceded that no theft was reported on that day. The third event on the videotape, according to Silva, showed Denson moving a plastic barrier between two rows of slot machines. Also, the videotape showed a person standing next to Denson whom Silva could not identify. Silva believed the person was conspiring with Denson to rob casino patrons.

The fourth videotaped incident showed an unidentified person distracting a casino customer while Denson removed coins from that customer's coin bucket. A fifth videotaped event showed a person, often seen with Denson, distracting a casino change person. While Denson was not present in the fifth videotaped event, Silva commented that he had seen similar diversions occur which allowed another person, possibly Denson, to take coins

from the distracted change person. In a sixth incident, Denson was looking at the mirrors in the casino. Silva opined that Denson was using mirrors to locate a potential victim on the other side of a row of slot machines. A seventh videotaped event showed Denson watching a security guard. An eighth videotaped event showed Denson talking to a woman at Harrah's.

After viewing the videotape, the district court sentenced Denson to a five-year prison term for each count of burglary to which Denson pleaded guilty. The district court also directed that the two prison terms be served consecutively.

## DISCUSSION

### Consideration of the surveillance videotape

Few limitations are imposed on a judge's right to consider evidence in imposing a sentence, and courts are generally free to consider information extraneous to the pre-sentencing report. *See* United States v. Trigg, 392 F.2d 860, 864 (7th Cir. 1968); United States v. Schipani, 315 F. Supp. 253, 257-60 (E.D.N.Y. 1970). Possession of the fullest information possible concerning a defendant's life and characteristics is essential to the sentencing judge's task of determining the type and extent of punishment. Williams v. New York, 337 U.S. 241, 247 (1949). Further, a sentencing proceeding is not a second trial, and the court is privileged to consider facts and circumstances that would not be admissible at trial. Silks v. State, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976). A district court is vested with wide discretion regarding sentencing, but this court will reverse a sentence if it is supported *solely* by impalpable and highly suspect evidence. Renard v. State, 94 Nev. 368, 369, 580 P.2d 470, 471 (1978); *Silks,* 92 Nev. at 94, 545 P.2d at 1161.

We conclude that the district court's consideration of the sur-veillance videotape in the present case withstands the *Silks* test because the district court's sentencing decision was not founded solely upon impalpable and highly suspect evidence. At Denson's preliminary hearing, the State presented testimony from security personnel at five casinos regarding five separate burglaries.

At the sentencing hearing, Silva testified that he personally saw Denson in Harrah's casino on numerous occasions and believed Denson was intending to rob casino customers. The State was also prepared to examine three other witnesses at the sentencing hearing who were security officers at other casinos. The security officers were prepared to testify that they were familiar with

Denson "on sight," and had recorded Denson committing crimes on videotape. Further, the district court was informed that Denson had three prior gross misdemeanor convictions that were similar to the crimes with which Denson was charged in this case. *See* United States v. Weston, 448 F.2d, 626, 633 (9th Cir. 1971), *cited with approval in Silks,* 92 Nev. at 94 n.2, 545 P.2d at 1161 n.2.

Accordingly, we conclude that the district court did not abuse its discretion by considering the videotape in question.

### Narration of surveillance videotape by Silva

A district judge's sentencing decision will be reversed if it is supported *solely* by impalpable and highly suspect evidence. *Silks,* 92 Nev. at 94, 545 P.2d at 1161. As stated above, however, Silva's narration was not the only evidence that the district court relied upon before sentencing Denson. Therefore, we conclude that the district court did not abuse its discretion by allowing Silva to narrate the surveillance videotape during Denson's sentencing hearing.

### Punishment for uncharged crimes

Denson contends that the district court improperly sentenced him for prior acts which were not supported by any evidence. We agree. Before issuing its sentencing decision, the district court made the following comments:

> [I] am absolutely convinced—the tape and Mr. Silva's testimony probably capped it all for me, but I started wondering from the first time I saw you . . . . [I]'m absolutely convinced you are a dangerous person.
>
> . . . .
>
> I think every single time you walk into a casino you have the intent to steal. Every single time you walk into a casino. And you know what, Mr. Denson? That's burglary. Every single time.
>
> . . . .
>
> Well, you're going to pay for it now. . . . *You're going to pay for it now, and you're going to pay for it for all the other times that you walked into a casino.* Sort of like it just caught up with you.

(Emphasis added.)

After sentencing Denson, the district judge told Denson that the sentence would be served consecutively because it is "for every time you have done it [committed a burglary]."

While a district court has wide discretion to consider prior uncharged crimes during sentencing, the district court must refrain from punishing a defendant for prior uncharged crimes. *See* Sheriff v. Morfin, 107 Nev. 557, 561, 816 P.2d 453, 455 (1991); *see also* Riker v. State, 111 Nev. 1316, 1326-27, 905 P.2d 706, 712-13 (1995). Consideration of those crimes is solely for the purpose of gaining a fuller assessment of the defendant's "life, health, habits, conduct, and mental and moral propensities." *Williams,* 337 U.S. at 245.

After reviewing the comments made by the district judge during Denson's sentencing hearing, we conclude that Denson's sentence was improperly intended to punish Denson for crimes with which he was not charged.

## CONCLUSION

Based upon our conclusion that the district court's sentence was improperly intended to punish Denson for crimes with which he was not charged, we reverse the district court's sentence and remand this case to a different district judge for resentencing.[1]

---

[1]THE HONORABLE JUSTICE ROBERT E. ROSE did not participate in the decision of this appeal.