# IN THE SUPREME COURT OF THE STATE OF NEVADA

JAMES ROBERT PETE,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 68081

FILED

JUN 27 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

Appellant James Pete was convicted of first-degree murder of Devone Blair and sentenced to life without the possibility of parole. Eighth Judicial District Court, Clark County; William D. Kephart, Judge. Pete appeals both his judgment of conviction and the district court's denial of his motion for new trial. We affirm.

### Detective Mogg's Opinion Testimony

Pete first complains the district court abused its discretion in allowing Detective Mogg to give opinion testimony over Pete's objection, an issue we review for an abuse of discretion. *Watson v. State*, 94 Nev. 261, 264-65, 578 P.2d 753, 755-56 (1978). A witness who offers an opinion based upon "scientific, technical or other specialized knowledge" testifies as an expert, NRS 50.275, and is subject to advance-notice and other requirements. *See Grey v. State*, 124 Nev. 110, 116-117, 178 P.3d 154, 159 (2008). The question in determining whether a witness is offering lay or expert testimony is, "does the testimony concern information within the common knowledge of . . . [an] average layperson or does it require some specialized knowledge or skill beyond the realm of everyday experience?" *Burnside v. State*, 131 Nev., Adv. Op. 40, 352 P.3d 627, 636 (2015). Thus,

if a witness relies on specialized law enforcement experience to make connections for the jury rather than personal observations, he is testifying as an expert. *United States v. Jones*, 739 F.3d 364, 369 (7th Cir. 2014).

To warrant reversal for the improper admission of expert opinion testimony, Pete must show: (1) the opinion testimony was expert, not lay; (2) its admission prejudiced him; and (3)(a) had the testimony been excluded or Pete been given proper advance notice, it is likely that a different verdict would have resulted, or (b) the prosecution acted in bad faith. *See Mitchell v. State*, 124 Nev. 807, 818-819, 192 P.3d 721, 729 (2008); *See also Valdez v. State*, 124 Nev. 1172, 1189, 196 P.3d 465, 476 (2008) (holding that appellant must show "substantial and injurious effect" on the jury verdict to warrant reversal); *Jones v. State*, 113 Nev. 454, 471, 937 P.2d 33, 67 (1997) (stating that either substantial prejudice or prosecutorial bad faith must be shown to warrant reversal).

The State used Mogg's experience as a homicide detective and with blood spatter as the foundation for admitting his opinion that Blair was lying down when attacked, negating self-defense. Mogg's opinion drew upon specialized knowledge, not deductions a layperson may have drawn. To that extent, Mogg offered an expert opinion. Therefore, it was error for the district court to admit Mogg's expert testimony because the State failed to provide the required advance notice to Pete and, arguably, to qualify Mogg.

Although error, the admission of this evidence did not substantially and adversely affect the jury's verdict, which is required for nonconstitutional error to merit reversal. *Burnside*, 131 Nev., Adv. Op.

40, 352 P.3d at 637 (citing NRS 178.598).[1] Here, as in *Burnside*, Pete complains that the lack of notice of Mogg's expert opinion testimony prejudiced him but he "has not explained what he would have done differently had proper notice been given, and he did not request a continuance." *Id.* Also, significant corroborative evidence supported the jury's conclusion that Pete did not act in self-defense because Blair was lying down and sleeping or passed out when the attack occurred. This evidence included testimony that Blair had been heavily drinking that night, his body position when found, the blanket and blood under his body, the number and pattern of stab wounds, the lack of defensive wounds on either man, and Pete's conduct and admissions during both the investigation and at trial. And, while Pete claims that Mogg's testimony contradicted that of the State's other two expert witnesses, it did not. Dr. Dutra, the coroner, was asked whether the wounds were consistent with "Mr. Blair being down on the ground on laying down when he sustained those injuries?" He responded, "It would not be inconsistent. In other words, it could be consistent." He further testified that the pattern of wounds indicated that Blair was not actively moving when stabbed. The crime scene analyst testified simply that she had not done the work needed to opine as to Blair's body position at the time of death. Nor do we

---

[1]Pete's efforts to convert the error in admitting Mogg's opinion from nonconstitutional to constitutional error fail. *Brady v. Maryland*, 373 U.S. 83, 87 (1963), applies when the state conceals exculpatory evidence from the defendant. Because Mogg's testimony was inculpatory, not exculpatory, no *Brady* violation occurred. Nor do we find a Sixth Amendment violation based on the district court's sustaining the State's objection to one of Pete's cross-examination questions. Pete's question was argumentative, the district court properly sustained the objection, and the record shows that Pete had ample opportunity to cross-examine Mogg.

agree that Pete has shown that the State acted in bad faith. Accordingly, the district court's error in admitting Mogg's opinion testimony was harmless.

Pete questions the district court judge's impartiality, asserting the judge showed favoritism in helping the State lay foundation for Mogg's opinion testimony. Reversal is warranted if the district court's actions prejudiced Pete's right to a fair trial. *Oade v. State*, 114 Nev. 619, 624, 960 P.2d 336, 339-40 (1998). Such prejudice did not occur here. While in bench conference, the district court informed the State the foundation it needed to lay. The jury was not privy to the conference and the judge appears to have acted out of concern for judicial economy and expediency. Thus, there was no impermissible assistance or favoritism that denied Pete a fair trial.

Pete claims that Mogg impermissibly invaded the province of the jury by telling them they should find that Blair was lying down when stabbed. But the record shows that Mogg did not recommend how the jury should resolve Pete's guilt or innocence or even that they should find Blair was lying down when stabbed. Rather, Mogg stopped at providing his opinion.

Finally, Pete argues that the State intentionally solicited false opinion testimony from Mogg regarding Blair's body position. Again, the record shows that Mogg merely offered his opinion, not that he lied about a factual matter. Therefore, no due process violation occurred.

*Other Evidentiary Matters*

During his testimony, Mogg narrated a video showing Pete throwing the murder weapon onto the roof of a building adjoining the crime scene. Pete maintains this constituted reversible error because Pete was readily identifiable in the video. Narration is permissible when a

"witness is more likely to correctly identify the defendant" from the video than a jury. *Rossana v. State*, 113 Nev. 375, 380, 934 P.2d 1045, 1048 (1997) (internal quotation marks omitted). Because Mogg had personal knowledge of Pete's physical appearance the night of the murder, the district court did not abuse its discretion in allowing the narration.

Pete next cites as reversible error instances in which the district judge sustained the State's objections to the defense's questioning. The district court has wide discretion to admit or exclude evidence, *Thomas v. State*, 122 Nev. 1361, 1370, 148 P.3d 727, 734 (2006), and, when error is not objected to below, admitting or excluding evidence must affect the appellant's substantial rights to merit reversal. *McLellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008). In the main, Pete fails to establish error in the admission or exclusion of evidence. While the judge did err in sustaining certain hearsay objections, the evidence sought to be elicited came in later, and thus there was no prejudice to Pete. Any other errors involved evidence so inconsequential that its improper exclusion was not sufficiently prejudicial to change the jury's verdict.[2]

*Pete's Proposed Jury Instructions*

Pete next challenges the district court's rejection of his proposed jury instructions nos. 28 and 29 on self-defense. The jury instructions the jury received paralleled those approved in *Runion v. State*, 116 Nev. 1041, 1051-52, 13 P.3d 52, 59 (2000). A defendant is not

---

[2]We decline to review Pete's argument that the district court abused its discretion when it allowed excessive use of leading questions by the State because Pete failed to cite to the record to support his contentions. NRAP 28(a)(10)(A); *Allianz Ins. Co. v. Gagnon*, 109 Nev. 990, 997, 860 P.2d 720, 725 (1993).

entitled to demand jury instructions with specific wording. *Crawford v. State*, 121 Nev. 744, 754, 121 P.3d 582, 589 (2005). Thus, there was no error.

### *Pete's Motion for New Trial due to Juror Misconduct*

The decision to grant or deny a motion for new trial based on juror misconduct is entrusted to the sound discretion of the district court. *Meyer v. State*, 119 Nev. 554, 561, 80 P.3d 447, 453 (2003). Although our review is ordinarily deferential, we review de novo the prejudicial effect of misconduct that exposed jurors to extrinsic evidence. *Id.* at 561-62, 80 P.3d at 453. We look to see if "the average, hypothetical juror would be influenced by the [ ] misconduct." *Id.* at 566, 80 P.3d at 456. If juror misconduct exists, and that misconduct had a reasonable probability of affecting the verdict, we will reverse the district court's denial of a motion for a new trial. *Id.* at 563-64, 80 P.3d at 455.

We find no such influence here. The juror ran a Wikipedia search on what constitutes murder, but he did not share the results of his research with the jury and he testified under oath that he disregarded his research upon receiving the jury instructions. *See Echavarria v. State*, 108 Nev. 734, 740, 839 P.2d 589, 593-94 (1992), *compare Bowman v. State*, 132 Nev., Adv. Op. 74, 387 P.3d 202, 205-06 (2016). Thus, it is improbable that the misconduct affected the verdict, and the district court did not abuse its discretion in denying Pete's motion.

### *Pete's Sentence to Life Without Parole*

We review a district court judge's sentencing determination for abuse of discretion, *Martinez v. State*, 114 Nev. 735, 737-38, 961 P.2d 143, 145 (1998), reviewing the entire record, *Hughes v. State*, 116 Nev. 327, 333, 996 P.2d 890, 893-94 (2000), to ensure that the punishment fits

 

the crime, *Martinez*, 114 Nev. at 738, 961 P.2d at 145, and this court will intervene only if prejudice is founded upon impalpable or highly suspect evidence, *Silks v. State*, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976). A sentence within the statutory limits is presumed to comport with the Eighth Amendment unless the statutory limits themselves are unconstitutional. *Blume v. State*, 112 Nev. 472, 475, 915 P.2d 282, 284 (1996). A district court has discretion to consider a defendant's prior convictions during sentencing. *See Denson v. State*, 112 Nev. 489, 492, 915 P.2d 284, 286-87 (1996). First-degree murder is punishable by life in prison without the possibility of parole. NRS 200.030(4)(b)(1). Use of a deadly weapon may be punished by not less than one and not more than twenty years in prison. NRS 193.165(1).

Pete's sentence was within the statutory limits and did not violate the Eighth Amendment. His objection to the victim-impact witness fails because Pete raised, then waived, the objection in district court. Finally, turning to the staleness of Pete's prior convictions, a district court may consider all previous convictions when sentencing a defendant. Thus, there was no error in sentencing.

### Sufficiency of Evidence to Sustain a Conviction

This court will sustain a conviction against a sufficiency-of-the-evidence challenge if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Middleton v. State*, 114 Nev. 1089, 1103, 968 P.2d 296, 306 (1998). We will not disturb a jury verdict if there is substantial evidence that supports the jury's verdict beyond a reasonable doubt. *Furbay v. State*, 116 Nev. 481, 486, 998 P.2d 553, 556 (2000).

At trial, Pete admitted to stabbing and killing Blair. Pete waited five hours after Blair's attack on Pangelinan before confronting Blair. Considering that Pete was smaller and weaker than Blair, Pete was "pissed as a motherfucker" at Blair, and Pete attempted to hide the murder weapon by throwing it onto the roof of an adjacent building, a rational juror could have found, based on substantial evidence, that Pete committed murder with malice aforethought.

As for self-defense, no weapon was found on Blair. Further, there were blankets over and beneath Blair, and his stab wounds indicate Blair was lying down and/or not moving around when he was stabbed. And, Blair had no defensive wounds—strong evidence that Blair did not attempt to stop Pete's knife attack. Thus, substantial evidence supports that Blair was asleep or lying down when Pete approached him, which negates self-defense. As the jury's verdict rests on substantial evidence, Pete's challenge does not succeed.

### Cumulative Error

Finally, Pete maintains that cumulative error mandates reversal. Cumulative error depends on "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Valdez v. State*, 124 Nev. 1172, 1195, 1198, 196 P.3d 465, 481-82 (2008).

The issue of guilt was not close: Pete admitted he killed Blair; the only question was self-defense. The evidence supported that Blair was lying down when attacked; that Pete ambushed Blair; and that Blair had no defensive wounds, had a high blood alcohol content, and a blanket wrapped around his legs. The evidentiary errors pale in significance against this proof, and appear to have been corrected or ameliorated by

Pete's counsel's skillful questioning at trial. Finally, the gravity of the crime was great: premeditated murder. The factors, when considered together, indicate that Pete was not deprived of a fair trial, and thus, the district court's cumulative errors do not warrant reversal.

*Conclusion*

Regarding any arguments that we have not specifically addressed above, we have considered all arguments and claims and hold they do not warrant reversal. We therefore ORDER the judgment of the district court AFFIRMED.

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

cc: Hon. William D. Kephart, District Judge
Karen A. Connolly, Ltd.
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk