# IN THE SUPREME COURT OF THE STATE OF NEVADA

DONALD TAYLOR,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 79218

FILED

SEP 18 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a district court order denying a postconviction petition for a writ of habeas corpus. Eighth Judicial District Court, Clark County; William D. Kephart, Judge. Appellant Donald Taylor argues that he received ineffective assistance of trial and appellate counsel. The district court denied the petition after conducting an evidentiary hearing. We affirm.

To demonstrate ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness and that prejudice resulted in that there was a reasonable probability of a different outcome absent counsel's errors. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984); *Warden v. Lyons*, 100 Nev. 430, 432-33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland*); *see also Kirksey v. State*, 112 Nev. 980, 998, 923 P.2d 1102, 1113 (1996) (applying *Strickland* to claims of ineffective assistance of appellate counsel). The petitioner must demonstrate the underlying facts by a preponderance of the evidence, *Means v. State*, 120 Nev. 1001, 1012, 103 P.3d 25, 33 (2004), and both components of the inquiry must be shown, *Strickland*, 466 U.S. at 697. For purposes of the deficiency prong, counsel is strongly presumed to have provided adequate assistance and exercised

20-34464

reasonable professional judgment in all significant decisions. *Id.* at 690. We defer to the district court's factual findings that are supported by substantial evidence and not clearly wrong, but review its application of the law to those facts de novo. *Lader v. Warden*, 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

Taylor first argues that trial counsel should have moved to suppress the evidence obtained following his traffic stop on the basis that he was detained for more than one hour without probable cause. He argues that the show-up identification that took place within that one-hour period could not provide probable cause because it was unreliable. The record, however, shows that probable cause had been established before the show-up identification. The victim's phone showed text messages and calls to and from "D" shortly before the killing; the text messages depicted an agreement where the victim would sell a large quantity of marijuana; witness A. Chenault told the police that the shooting took place after the buyers arrived, pulled guns, and stated that they were stealing the marijuana; and "D"'s phone number was associated with Taylor in other police records. A challenge to Taylor's initial detention on a probable-cause basis would have failed. *See Doleman v. State*, 107 Nev. 409, 413, 812 P.2d 1287, 1289 (1991) ("Probable cause to conduct a warrantless arrest exists when police have reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed by the person to be arrested."). Taylor accordingly has not shown deficient performance or

prejudice in counsel's omitting this challenge. The district court therefore did not err in denying this claim.[1]

Taylor next argues that trial counsel should have retained an investigator to interview Chenault about her changing description of the shooter. Specifically, he argues that an investigation could have developed evidence that Chenault's identification of Taylor as the shooter was influenced by a booking photo texted by the investigating detective to Chenault's daughter and shown to Chenault after the show-up. The discrepancies in Chenault's descriptions are well-documented in the record, and counsel cross-examined Chenault on this issue and argued it extensively. As Taylor has not alleged that anything would be uncovered that was not already known and available to be argued, he has not shown deficient performance or that he was prejudiced. The district court therefore did not err in denying this claim.

Taylor next argues that trial counsel should have retained an eyewitness-identification expert, specifically Dr. Deborah Davis, who had been retained by Taylor's codefendant but did not testify after the codefendant pleaded guilty. Substantial evidence supports the district court's finding that counsel made a strategic decision to challenge Chenault's identification by cross-examination rather than an expert witness, as counsel testified at the evidentiary hearing that he identified the eyewitness identification as a significant issue and considered retaining an expert and the record shows that counsel challenged the identification

_____

[1]Taylor argues that the district court denied this and other claims without an evidentiary hearing. The record belies this contention, as an evidentiary hearing was held and postconviction counsel had the opportunity to ask trial counsel about this omission or any other claim raised in the pleadings.

through pretrial motions, cross-examination, and closing argument. Taylor has not shown extraordinary circumstances warranting a challenge to counsel's strategic decision and thus has not shown deficient performance. *See Lara v. State*, 120 Nev. 177, 180, 87 P.3d 528, 530 (2004). Further, Taylor has not shown prejudice. Davis testified at the evidentiary hearing that her testimony would have addressed limitations on the accuracy of eyewitness identifications. Counsel, however, argued these issues and the facts undermining the reliability of Chenault's identification at trial, such that we cannot say that omitting Davis' testimony undermines our confidence in the jury's verdict. *See Strickland*, 466 U.S. at 694 ("A reasonable probability is a probability sufficient to undermine confidence in the outcome.").

Taylor next argues that appellate counsel should have better argued that Chenault's identification was irreparably tainted by the suggestive photograph of Taylor, shown to her by her daughter after the detective sent it by text message to the daughter. Appellate counsel argued briefly that Chenault's in-court identification was tainted by both the suggestive show-up identification and the photograph, such that the in-court identification should have been suppressed. We determined on appeal that the brief statement of the issue was not supported by cogent argument or relevant authority. *Taylor v. State*, 132 Nev. 309, 320 n.6, 371 P.3d 1036, 1043 n.6 (2016). Here, however, Taylor does not proffer the cogent argument or relevant authority that appellate counsel omitted, stating merely that counsel should have established that the photograph was overly suggestive and that Chenault's in-court identification was based on the photograph. We concluded that Chenault's in-court identification had an adequate independent basis in her observation of the suspects in her

apartment before the shooting. *Id.* at 322, 371 P.3d at 1045. Taylor has not argued how the photograph compromised this independent basis. Insofar as Taylor relies on *United States v. Wade*, 388 U.S. 218, 240 (1967), and *Moore v. Illinois*, 434 U.S. 220, 225-26 (1977), such reliance is misplaced, as those authorities are relevant only for the general proposition that an in-court identification may be tainted by a suggestive pretrial lineup. Appellate counsel did not perform deficiently and Taylor was not prejudiced by counsel's omitting authorities supporting this general proposition. The district court therefore did not err in denying this claim.

Taylor next argues that trial and appellate counsel should have challenged references to cellular-service-company custodians of records as "experts." Taylor has not shown that either a trial or appellate challenge had merit, as testimony of a cellular-service-company record custodian is expert testimony and thus the references accurately described the testimony. *See Burnside v. State*, 131 Nev. 371, 384, 352 P.3d 627, 636-37 (2015). Taylor accordingly has shown neither deficient performance nor prejudice in the omission of meritless claims. The district court therefore did not err in denying this claim.

Taylor next argues that trial counsel should have challenged the State's failure to notice the record custodian testimony as expert testimony.[2] Taylor has not provided the State's witness lists, and this claim is accordingly a bare claim unsupported by the record. *See Riggins v. State*, 107 Nev. 178, 182, 808 P.2d 535, 538 (1991) (concluding that materials omitted from the record on appeal "are presumed to support the district court's decision"), *rev'd on other grounds by Riggins v. Nevada*, 504 U.S. 127

---

[2]Taylor does not argue that appellate counsel should have raised a claim on this basis.

SUPREME COURT
OF
NEVADA

:01 1947A

(1992); *see also Thomas v. State*, 120 Nev. 37, 43 n.4, 83 P.3d 818, 822 n.4 (2004) ("Appellant has the ultimate responsibility to provide this court with portions of the record essential to determination of issues raised in appellant's appeal." (internal quotation marks omitted)). Even if the State failed to notice the record custodians as experts, Taylor has not shown that trial counsel performed deficiently in omitting a challenge, as we settled that expert witness notice was required in these circumstances two years after Taylor's trial. *See Burnside*, 131 Nev. at 384, 352 P.3d at 636-37. "[C]ounsel's failure to anticipate a change in the law does not constitute ineffective assistance of counsel." *Nika v. State*, 124 Nev. 1272, 1289, 198 P.3d 839, 851 (2008). The district court therefore did not err in denying this claim.

Taylor next argues that trial counsel provided ineffective assistance when his lead counsel David Phillips had his license suspended and could not appear at several pretrial hearings and that this suspension deprived him of his Sixth Amendment right to counsel. Taylor was represented at these hearings by his second attorney John Rogers. Phillips' error in allowing his license to be suspended for failing to submit his CLE certification does not constitute deficient performance. *See United States v. Mouzin*, 785 F.2d 682, 698 (9th Cir. 1986) (observing that suspension does not per se constitute ineffective representation and looking instead to counsel's trial performance). Taylor has not specifically alleged how Rogers' representation at the hearings was deficient or how Phillips' presence at these hearings would have led to a reasonable probability of a different outcome. Insofar as he argues that counsel effectively abandoned his representation by being suspended, Taylor was not abandoned by counsel because Rogers was able to represent him. *See United States v. Cronic*, 466

O) 1947A

U.S. 648, 656 (1984) ("[T]he adversarial process protected by the Sixth Amendment requires that the accused have counsel acting in the role of an advocate." (internal quotation marks omitted)). And Taylor's argument that he was denied his counsel of choice fails, as he was not entitled to counsel of his choice where counsel was appointed.[3] *See Young v. State*, 120 Nev. 963, 968, 102 P.3d 572, 576 (2004) (recognizing that "[a] defendant's right to substitution of counsel is not without limit"). And to the extent that Taylor argues that appellate counsel should have raised these issues on appeal, he has not identified a basis that would support a meritorious appellate claim, as he had counsel at all critical stages, and thus has not shown deficient performance or prejudice. The district court therefore did not err in denying these claims.

Taylor next argues that trial counsel should have waived the penalty phase. Substantial evidence supports the district court's finding that counsel made a strategic decision to decline to waive the penalty phase when asked before trial. Taylor has not shown extraordinary circumstances warranting a challenge to that decision and thus has not shown deficient performance. *See Lara*, 120 Nev. at 180, 87 P.3d at 530. Moreover, Taylor has not shown how waiving the penalty phase would have led to a reasonable probability of a different outcome. The district court therefore did not err in denying this claim.

Taylor next argues that trial counsel did not properly prepare for the penalty phase. The record belies Taylor's contention that trial counsel failed to present a mitigation case, as the jury was presented with photographs of Taylor's girlfriend and children and evidence regarding his

---

[3]Taylor did not contemporaneously object to Rogers' representation while Phillips was unavailable.

efforts to turn his life around through employment and education, and counsel argued in favor of Taylor's character and that he should be given an opportunity to rehabilitate himself and reenter society. Contrary to Taylor's contention, it was not objectively unreasonable for counsel to refrain from arguing that Taylor's criminal history was not significant, as this was false, the State extensively argued regarding that history, and counsel reasonably avoided calling attention to it. The record repels Taylor's contention that his mother would have testified in mitigation, as counsel reported contemporaneously that Taylor did not want to subject his mother to that. And contrary to Taylor's contention, it was not objectively unreasonable for counsel to decline to request a jury instruction on mitigating evidence pursuant to NRS 200.035, as that statute concerns mitigating circumstances to weigh against aggravating circumstances in capital penalty phases and Taylor's was not a capital trial. *See Lisle v. State*, 131 Nev. 356, 366-67, 351 P.3d 725, 733 (2015) (discussing mitigating evidence pursuant to NRS 200.035 in capital proceedings). Accordingly, Taylor has not shown deficient performance. The district court therefore did not err in denying this claim.

Taylor next argues that trial and appellate counsel should have investigated and challenged evidence during the penalty phase as to Taylor's charge for a 2001 murder in Pomona, California, that was dismissed without explanation. Taylor argues that investigation would have revealed that another suspect was culpable. Taylor, however, disregards that there were two suspect shooters in the 2001 drive-by shooting—proffering a second suspect would not preclude Taylor's participation. Taylor has not shown deficient performance by trial counsel, who argued strenuously that this evidence was impalpable and highly

suspect. Further, he has not shown prejudice regarding trial counsel's performance, as evidence of a second suspect would not itself render the Pomona murder evidence impalpable or highly suspect. *See Nunnery v. State*, 127 Nev. 749, 769, 263 P.3d 235, 249 (2011) ("[Evidence of uncharged crimes] is relevant because a sentencing determination should be based on the entirety of a defendant's character, record, and the circumstances of the offense, but it may be excluded from a capital penalty hearing if it is impalpable or highly suspect." (internal citation and quotation marks omitted)). And Taylor has not shown deficient performance or prejudice regarding appellate counsel's omission, as an appellate claim lacked merit where the jury considered other evidence, including victim-impact testimony, Taylor's prior convictions, and evidence of Taylor's past domestic violence, such that his sentence did not rest solely on the Pomona murder. *See Denson v. State*, 112 Nev. 489, 492, 915 P.2d 284, 286 (1996) (reversing "a sentence if it is supported *solely* by impalpable and highly suspect evidence" (emphasis original)). The district court therefore did not err in denying this claim.

Taylor next argues that trial and appellate counsel should have challenged prospective juror 121 for cause because she was unwilling to consider all possible punishments in a penalty phase. While prospective juror 121 stated that she believed that murder warranted "the ultimate punishment," she assented that she would consider all possible punishments and follow the court's instructions. Taylor accordingly has shown neither deficient performance nor prejudice regarding trial counsel's omitting a meritless challenge for cause on this basis. *See Leonard v. State*, 117 Nev. 53, 65, 17 P.3d 397, 405 (2001) (providing that a prospective juror should be removed for cause if her "views would prevent or substantially

SUPREME COURT
OF
NEVADA

9

impair the performance of [her] duties as a juror in accordance with [her] instructions and [her] oath" (internal quotation marks omitted)). Further, Taylor has not shown that an appellate claim on this basis had merit and thus has not shown deficient performance or prejudice in that regard. *Cf. Blake v. State*, 121 Nev. 779, 796, 121 P.3d 567, 578 (2005) (recognizing that the right to an impartial jury is not violated unless a juror empaneled was unfair or biased). The district court therefore did not err in denying this claim.

Taylor next argues that *Carpenter v. United States*, 138 S. Ct. 2206 (2018), applies retroactively and that the seizure of his cell site location information without a warrant violated the Fourth Amendment.[4] *Carpenter* was decided after Taylor's conviction became final, and Taylor argues that it clarified existing law, rather than announcing a new rule of constitutional procedure. We disagree. *Carpenter* announced a new rule, as it overruled a line of authority permitting warrantless seizure of cell site data under certain circumstances. *See United States v. Carpenter*, 819 F.3d 880, 887 (2016) (citing circuit court decisions declining to apply Fourth Amendment protections to cell site metadata), *rev'd*, 138 S. Ct. 2206; *United States v. Yang*, 958 F.3d 851, 864 (9th Cir. 2020) (Bea, J., concurring in the judgment) (recognizing that *Carpenter* set forth a new rule); *United States v. Goldstein*, 914 F.3d 200, 201-02 (3d Cir. 2019) (same); *see also Bejarano v. State*, 122 Nev. 1066, 1075, 146 P.3d 265, 272 (2006) ("[A] rule is new when it overrules precedent, disapproves a practice sanctioned by prior cases, or overturns a longstanding practice uniformly approved by lower

---

[4]The *Carpenter* decision was entered after Taylor's conviction had become final, and thus, his claim based on *Carpenter* could not have been raised on direct appeal. *See* NRS 34.810(1)(b), (3).

courts."). And as *Carpenter*'s extension of the warrant requirement to cell site location data did not "establish that it is unconstitutional to proscribe certain conduct as criminal or to impose a type of punishment on certain defendants because of their status or offense" or "establish a procedure without which the likelihood of an accurate conviction is seriously diminished," it does not apply retroactively. *See Bejarano*, 122 Nev. at 1074-75, 146 P.3d at 271. The district court therefore did not err in denying this claim.

Taylor next argues that trial and appellate counsel should have challenged the constitutionality of the legislative processes leading to the codification of the Nevada Revised Statutes. He argues that the 1951 statute that created a statute revision commission to revise and compile Nevada's laws—of which Supreme Court justices would be three members—violated a constitutional provision barring justices from holding another nonjudicial office. He also argues that this deprived the trial court of subject matter jurisdiction and violated the separation of powers. Taylor has not demonstrated deficient performance or prejudice because Taylor did not show that the trial court lacked subject matter jurisdiction. *See* Nev. Const. art. 6 § 6; NRS 171.010. Taylor further did not show that justices of the Nevada Supreme Court violated the constitution by serving in a nonjudicial public office because he did not show that participating in the commission "[i]nvolve[d] the continuous exercise, as part of the regular and permanent administration of the government, of a public power, trust or duty." Nev. Const. Art. 6, § 11; NRS 281.005(1) (defining "Public officer"); 1963 Nev. Stat., ch. 403, preface, at 1011 (providing that the act serves to abolish the statute revision commission and to assign its duties to the Legislative Counsel Bureau). Moreover, the Legislature enacts the actual laws of

Nevada, while the Legislative Counsel Bureau—which succeeded the statute revision commission—codifies and classifies those laws as the Nevada Revised Statutes, grouping laws of similar subject matter together in a logical order, but not itself exercising the legislative function. *See* NRS 220.110; NRS 220.120(3); NRS 220.170(3); 1963 Nev. Stat., ch. 403, preface, at 1011. Taylor accordingly has not shown that the statute revision commission improperly encroached upon the powers of another branch of government, violating the separation of powers. *See Comm'n on Ethics v. Hardy*, 125 Nev. 285, 291-92, 212 P.3d 1098, 1103 (2009) ("The purpose of the separation of powers doctrine is to prevent one branch of government from encroaching on the powers of another branch."). The district court therefore did not err in denying this claim.

Lastly, Taylor argues cumulative error. Even assuming that multiple deficiencies in counsel's performance may be cumulated to demonstrate prejudice in a postconviction context, *see McConnell v. State*, 125 Nev. 243, 259, 212 P.3d 307, 318 (2009), Taylor has not demonstrated multiple instances of deficient performance to cumulate.

Having considered Taylor's contentions and concluded that they do not warrant relief, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Parraguirre

_____, J.
Hardesty

_____, J.
Cadish

cc: Hon. William D. Kephart, District Judge
Gaffney Law
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

01 1947A