139 Nev., Advance Opinion 24

IN THE SUPREME COURT OF THE STATE OF NEVADA

WILLIAM RENE ALFARO,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 83316

FILED

AUG 24 2023

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to jury verdict, on seven counts of sexual assault against a child under 14 and three counts of lewdness with a child under 14. Second Judicial District Court, Washoe County; Barry L. Breslow, Judge.

*Affirmed in part, reversed in part, and remanded.*

Las Vegas Defense Group, LLC, and Michael V. Castillo and Michael L. Becker, Las Vegas,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Christopher J. Hicks, District Attorney, and Jennifer P. Noble, Deputy District Attorney, Washoe County,
for Respondent.

BEFORE THE SUPREME COURT, CADISH and PICKERING, JJ., and GIBBONS, Sr. J.[1]

---

[1]The Honorable Mark Gibbons, Senior Justice, participated in the decision of this matter under a general order of assignment.

23-27667

*OPINION*

By the Court, PICKERING, J.:

A jury convicted appellant William Alfaro of seven counts of sexual assault against a child under 14 and three counts of lewdness with a child under 14 for acts committed against ED, the daughter of a family friend, between June and December 2015. Alfaro denies the charges and raises insufficiency of the evidence as a principal issue on appeal. He also argues that the district court erred in not dismissing the lewdness counts as redundant to the sexual assault counts; in admitting evidence that he committed other uncharged bad acts against ED; in giving and refusing certain jury instructions; and in imposing the maximum sentence allowed by law, for an aggregate total of 275 years to life. We reverse one of the lewdness convictions as redundant to a sexual assault involving the same episode. And, while we agree with Alfaro that the district court erred in admitting two of the uncharged bad acts and in issuing a jury instruction unnecessarily defining "lewdness" separate from the statutory definition provided by NRS 201.230, we find those errors harmless. Finding no reversible error except the redundant lewdness count, we otherwise affirm.

I.

A.

Alfaro was a family friend of ED's mother, Sara, and ED grew up calling him "Uncle Bill." ED's parents struggled with homelessness and addiction. When Sara, ED, and ED's younger brother found themselves with no place to live, Sara turned to Alfaro, who drove to California, picked them up, and brought them to Fernley, Nevada. In Fernley, Sara and the children lived with Alfaro, first at a house he had been sharing with a friend and, later, at the Lazy Inn motel.



ED's father, Naylan, followed Sara and the children to the Lazy Inn. A heavy drinker, Naylan often fought with Sara and occasionally hit the children. When money for the motel ran out, Sara returned to California, and Naylan and the children moved from Fernley to a rehabilitation shelter in Reno. The shelter evicted them after Naylan violated its ban on drugs and alcohol. Again without a place to live, Naylan and the children rejoined Alfaro, who had by then rented a room at the Gateway Inn in Reno.

The family stayed with Alfaro at the Gateway Inn from June 1 through December 31, 2015. During this time, ED turned ten and entered the fourth grade. The room had one bed, which ED shared with Alfaro, while her brother slept on the floor with Naylan (or Sara, when she visited). Alfaro's charged acts of sexual assault and lewdness against ED all occurred at the Gateway Inn during this seven-month span, either at night while ED's father and brother were sleeping or when she and Alfaro were alone in the room together. The State would later charge Alfaro with, among other acts, forcing ED to fellate him and penetrating her vaginally with his penis and fingers and anally with his penis, his fingers, and a Sharpie pen.

ED said nothing about the abuse until Naylan moved the children from the Gateway Inn to the home of his girlfriend, Rochelle. Months later, the couple left the children with a friend of Rochelle's, to whom ED disclosed Alfaro's abuse. The friend called Child Protective Services, which interviewed ED and referred the case to law enforcement. Detective Ashley Harms interviewed ED and had her examined by Dr. Kristen MacLeod, a pediatrician board-certified in child abuse and neglect. The examination revealed no genital trauma, which Dr. MacLeod described

SUPREME COURT
OF
NEVADA

(O) 1947A

as normal in child sex abuse cases, especially those involving delayed reporting.

Alfaro voluntarily submitted to an interview with Detective Harms, which lasted more than three hours. In the interview, Alfaro adamantly denied abusing ED but corroborated basic details of ED's account, including date range, location, that the two shared a bed, that they occasionally engaged in what he characterized as horseplay, and that he had a prescription for Soma, a muscle relaxant that ED told Harms Alfaro would give her to facilitate his assaults. Alfaro also consented to a search of his personal storage unit and his room at the Gateway Inn. The searches turned up Sharpie pens, which ED had said Alfaro used to assault her, but did not uncover any nude pictures of ED, which ED also referenced in speaking to Detective Harms.

B.

The State charged Alfaro with eight counts of sexual assault against a child under 14 and three counts of lewdness with a child under 14 for his acts at the Gateway Inn in Reno between June and December 2015. He was not charged for any acts in Fernley, located about 30 miles outside of Reno in Lyon County. Before trial, the district court granted the State's motion to admit evidence at trial of four uncharged acts: that Alfaro took nude photographs of ED, gave her Soma, showed her pornography, and had her dress in fishnet stockings. The former two acts were admitted as prior uncharged sexual offenses under NRS 48.045(3), and the latter two as *res gestae* under NRS 48.035(3).

Although the charged acts dated back to 2015, trial did not occur until 2021. At trial, the State presented testimony from ED, who was by then 15 years old. It also called the woman to whom ED confided the

Supreme Court
OF
Nevada

(0) 1947A

4

abuse, Detective Harms, and Dr. MacLeod. The State did not call Rochelle or any members of ED's family, and the defense called no witnesses. On stipulation of the parties, the State played a videotape of Alfaro's interview with Detective Harms during its case-in-chief.

The jury convicted Alfaro on all counts, except one the State abandoned during closing. Alfaro filed a motion for acquittal under NRS 175.381(2) and for a new trial under NRS 176.515(4) on the bases of insufficient evidence and conflicting evidence, respectively. Alfaro also challenged his lewdness convictions as redundant to his convictions for sexual assault. The motions were denied. Rejecting both Alfaro's and the State's recommendations, the district judge imposed the maximum sentence allowed by law, 10 consecutive terms of incarceration totaling 275 years, in the aggregate, to life. This appeal timely followed.

## II.

Alfaro argues that we must reverse his convictions because they are not supported by sufficient evidence. The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction "except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). In deciding a challenge to the sufficiency of the evidence, the reviewing court does not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 318-19 (internal quotation omitted). Instead, it asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. *See Franks v. State*, 135 Nev. 1, 7, 432 P.3d 752, 757 (2019)

(stating that the "test for sufficiency upon appellate review is not whether this court is convinced of the defendant's guilt beyond a reasonable doubt, but whether the jury, acting reasonably, could be convinced to that certitude by evidence it had a right to accept") (quoting *Edwards v. State*, 90 Nev. 255, 258-59, 524 P.2d 328, 331 (1974)).

## A.

Alfaro makes two distinct sufficiency-of-the-evidence arguments. First, he argues, as he did in district court, that the State did not prove he subjected ED to the "sexual penetration" required by NRS 200.366(1) to convict him of the sexual assaults charged in count I (alleging that Alfaro "put his penis into ED's anus on multiple occasions"), counts III and IV (alleging that he "put his penis into ED's vagina" two different times), and count VII (alleging that he "put his finger(s) into ED's anus"). *See Kassa v. State*, 137 Nev. 150, 152, 485 P.3d 750, 755 (2021) (noting that appellate review of an order denying a motion for a judgment of acquittal is essentially the same as a review for the sufficiency of the evidence). Second, citing *LaPierre v. State*, 108 Nev. 528, 531, 836 P.2d 56, 58 (1992), and the lack of independent, corroborating evidence, Alfaro argues that ED's testimony lacked the specificity needed to support the convictions, requiring reversal on all counts.

The State sufficiently proved penetration for a rational juror to convict Alfaro on the contested sexual assault counts. As written at the relevant time, NRS 200.366(1) (2007) defined sexual assault as "subject[ing] another person to sexual penetration," while NRS 200.364(5) (2013) defined "[s]exual penetration" to mean "cunnilingus, fellatio, *or any intrusion, however slight, of any part of a person's body* or any object manipulated or inserted by a person *into the genital or anal openings of the body of another,*

Supreme Court
of
Nevada

(0) 1947A

6

including sexual intercourse in its ordinary meaning." (emphases added). Alfaro points to instances during ED's testimony where she answered, "I can't remember" to a question about Alfaro putting "his front private part, his penis, into your body," or denied that he was able to "get any of his penis into your front private," as establishing a failure to prove penetration. But ED continued, explaining that when Alfaro tried to "push his penis into me . . . it wouldn't work because I had started crying and said that it hurt . . . and was begging him stop," that Alfaro got the tip of his penis in her anus, and that he would use lubricants to facilitate his assaults when he had difficulty inserting his penis or fingers into her vaginal or anal openings. A rational juror could reasonably interpret this testimony to say that, while Alfaro could not fully insert his penis, penetration, "however slight" occurred, NRS 200.364(5), since ED would not have cried out in pain unless it did. *See State v. Toohey*, 816 N.W.2d 120, 129-31 (S.D. 2012) (finding sufficient proof of penetration under a similar statute where the child testified that the assault caused her pain) (collecting cases).

Alfaro's close parsing of ED's trial testimony also disregards the other evidence the jury properly could consider. That evidence included the handwritten note ED gave Detective Harms during their initial interview in 2016, in which ED wrote that Alfaro "would stick his front private part in my back private part, and push it in"; testimony from Detective Harms that, during the same interview, ED disclosed that Alfaro put his "front private part" in her "front and back private parts" and his fingers in her anus; and testimony from Dr. MacLeod about similar statements ED made when she examined ED, also in 2016. Although Alfaro omitted ED's handwritten note from the record on appeal, he stipulated to its admission as a trial exhibit and Detective Harms read from it during her testimony.

SUPREME COURT
OF
NEVADA

(O) 1947A

7

*See Snipes v. State*, No. 82384, 2022 WL 500678, at *1 & n.2 (Nev. Feb. 17, 2022) (relying on testimony a witness read from an exhibit omitted from the record on appeal and noting that, since the appellant has the burden to provide a complete record on appeal, missing portions are presumed to support the judgment below). The jury also was entitled to consider ED's prior statements to Detective Harms and Dr. MacLeod in making its decision. *See Crowley v. State*, 120 Nev. 30, 35, 83 P.3d 282, 286 (2004) (holding that "when a trial witness fails, for whatever reason, to remember a previous statement made by that witness, the failure of recollection constitutes a denial of the prior statement" that makes the prior statement admissible as substantive proof).

Alfaro builds his case for complete acquittal on the same flawed foundation. He concentrates on the generality of and occasional inconsistencies in ED's testimony and emphasizes the lack of independent corroborating evidence. But "the testimony of a sexual assault victim alone [can be] sufficient to uphold a conviction." *LaPierre*, 108 Nev. at 531, 836 P.2d at 58; *see Franks*, 135 Nev. at 7, 432 P.3d at 757 ("a lewdness victim's testimony need not be corroborated"). Our case law recognizes "that it is difficult for a child victim to recall exact instances when the abuse occurs repeatedly over a period of time." *LaPierre*, 108 Nev. at 531, 836 P.2d at 58. While the child must "testify with *some* particularity" about the charged incidents and do so in a way that supplies "reliable indicia that the . . . acts charged actually occurred," the child's testimony alone, if it meets these standards, can be sufficient to convict. *Id.*; *see Rose v. State*, 123 Nev. 194, 163 P.3d 408 (2007). ED's testimony distinguished between Fernley, where Alfaro's uncharged grooming of her allegedly began, and the Gateway Inn in Reno, where the charged acts occurred. She adequately described the

time frame, place, and manner of the activity underlying each count at trial, and her consistent, repeated disclosures to third parties, some of whom testified to those disclosures at trial, bolstered her testimony.

Almost six years passed between the charged acts of abuse and the trial. To the extent ED's testimony contained internal inconsistencies or conflicted with Alfaro's account, resolving competing narratives is the province of the jury, not to be disturbed if their verdict is supported by substantial evidence. *See Guitron v. State*, 131 Nev. 215, 221, 350 P.3d 93, 97 (Ct. App. 2015).[2] Because a rational trier of fact could have found in ED's testimony and the other evidence at trial the elements necessary to convict Alfaro, we reject Alfaro's argument for reversal on all counts.

## B.

Alfaro was convicted on three counts of lewdness with a child under 14, pursuant to NRS 201.230, for touching or fondling E.D.'s breasts (count IX) and buttocks (count X) and kissing her on the mouth (count XI). On appeal, he challenges these convictions as redundant because the State failed to provide sufficient evidence that the lewd acts were separate and distinct from the acts for which he was convicted of sexual assault. On one count, we agree with Alfaro.

---

[2]Alfaro also challenges the order denying his motion for a new trial under NRS 176.515(4), based on conflicts in the evidence as to his guilt. *See State v. Purcell*, 110 Nev. 1389, 1394, 887 P.2d 276, 278-79 (1994). But NRS 176.515(4) is permissive, *see Washington v. State*, 98 Nev. 601, 603, 655 P.2d 531, 532 (1982), and reposes discretion in the district judge, whose exercise of discretion is not reversible except for "palpable" abuse, *Domingues v. State*, 112 Nev. 683, 695, 917 P.2d 1364, 1373 (1996). The district court did not abuse its considerable discretion in denying Alfaro's motion for new trial based on conflicts in the evidence.

SUPREME COURT
OF
NEVADA

(O) 1947A

NRS 201.230(1) defines lewdness with a child as "any lewd or lascivious act, *other than acts constituting the crime of sexual assault . . . .*" (emphasis added). This provision makes sexual assault and lewdness with a child alternative or mutually exclusive offenses, "meaning as a matter of statutory interpretation that the same act can yield a conviction for sexual assault or lewdness [with a child] but not both." *Jackson v. State*, 128 Nev. 598, 612, 291 P.3d 1274, 1283 (2012) (discussing *Braunstein v. State*, 118 Nev. 68, 79, 40 P.3d 413, 421 (2002), and *Crowley*, 120 Nev. at 33-34, 83 P.3d at 285); *see State v. Koseck*, 113 Nev. 477, 479, 936 P.2d 836, 838 (1997). Because "[t]he State has the burden to show that the defendant committed a crime," and because a lewd act must not also constitute sexual assault, NRS 201.230(1), "the State has the burden, at trial, to show that the lewdness was not incidental to the sexual assault"—that is, that the lewd and assaultive acts were adequately "separate and distinct" to support convictions for both, *Gaxiola v. State*, 121 Nev. 638, 651-53, 119 P.3d 1225, 1234-35 (2005). To meet that burden, the State must provide sufficient evidence of separateness such that a rational juror could reasonably find two separate crimes. *See Jackson v. Virginia*, 443 U.S. at 316. If the State fails in that burden, the lewdness conviction must be reversed as redundant to the sexual assault. *Braunstein*, 118 Nev. at 78-79, 40 P.3d at 420-21.

Separately charged acts of lewdness with a child and sexual assault can occur "as part of a single criminal encounter," *see Townsend v. State*, 103 Nev. 113, 120-21, 734 P.2d 705, 710 (1987) (analogizing to multiple acts of sexual assault), if the defendant "stopped [the lewd] activity before proceeding" to the assault, *id.* at 121, 734 P.2d at 710. The lewd act cannot, however, be a mere "prelude" intended to "arouse" the victim or "predispose" them to the assault. *Crowley*, 120 Nev. at 34, 83 P.3d at 285.

SUPREME COURT
OF
NEVADA

If the State charges both sexual assault and lewdness with a child and fails to provide "any evidence regarding the sequence of events and under what circumstances the lewdness occurred," we must assume, lacking any evidence to the contrary, that the charges are redundant. *See Gaxiola*, 121 Nev. at 653, 119 P.3d at 1235-36 (noting also that the victim did not indicate whether the lewd act "occurred on a separate day or time frame" from the charged sexual assault).

ED testified that Alfaro touched her breasts and buttocks at the Gateway Inn, but her testimony does not establish that these acts occurred at a time separate and distinct from his assaults, nor did the State ever ask any clarifying questions to that effect. However, in his interview with law enforcement, while Alfaro denied that he sexually assaulted ED, he stated that he pinched ED's breasts and buttocks as a form of horseplay. Dr. MacLeod later testified that grooming behavior can include "close physical contact" and that it is inappropriate for an adult man to pinch a nine-year-old girl's chest or buttocks. Because Alfaro's own statements describe acts separate from a sexual assault that involved touching or fondling ED's breasts and buttocks and Dr. MacLeod's testimony supports a finding that Alfaro had the requisite "lewd and lascivious" sexual intent, NRS 201.230, and ED's testimony places such acts in Reno, we conclude that a rational juror could have found the same beyond a reasonable doubt and reject his redundancy challenges to counts IX and X.

However, Alfaro did not admit to kissing ED on the mouth, and her only relevant testimony at trial was that she awakened "one time" at the Gateway Inn to find Alfaro digitally penetrating her and that he then "French kissed" her. The State did not prove any other mouth kissing separate and distinct from a charged sexual assault and, in fact, ED's trial

(O) 1947A

testimony was that this only occurred once. The State therefore failed its burden to provide sufficient evidence "regarding the sequence of events" involving both lewd and assaultive acts, *see Gaxiola*, 121 Nev. at 653, 119 P.3d at 1235-36, and we reverse Alfaro's conviction under count XI (lewdness with a child under 14) for kissing ED on the mouth.

### III.

In the alternative, Alfaro seeks a new trial based on evidentiary and instructional error. While we agree that the district court erred in admitting two pieces of prior misconduct evidence and in giving an unnecessary jury instruction, the errors were harmless and do not provide a basis for a new trial.

### A.

NRS 48.045(2) states the general rule against using prior misconduct to prove criminal propensity: "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." Despite this rule, the prosecution often seeks to introduce evidence of a defendant's uncharged misconduct in sexual assault cases. Nevada's evidence code offers three possible paths to the admission of such evidence. First, as with any other prior misconduct evidence, evidence of uncharged sexual misconduct may be admitted under NRS 48.045(2) for a non-propensity purpose "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Second, the Legislature adopted NRS 48.045(3) in 2015 to permit evidence of an uncharged sexual offense to support a normally forbidden inference of criminal propensity in a sexual offense prosecution. *See Franks*, 135 Nev. at 4, 432 P.3d at 755. And third, NRS 48.035(3) permits the admission of evidence "so closely related" to the

SUPREME COURT
OF
NEVADA

(O) 1947A

12

charged act that the act cannot otherwise be described, commonly known as *res gestae* evidence.

Before trial, the State filed a motion to permit it to introduce evidence at trial of four instances of uncharged misconduct by Alfaro. The State did not argue, either in district court or on appeal, that the evidence qualified for admission under NRS 48.045(2)—a steep path that would have required the State to prove each act by clear and convincing evidence and to identify a legitimate non-propensity purpose for its admission. *See Petrocelli v. State*, 101 Nev. 46, 52, 692 P.2d 503, 508 (1985), *superseded in part by statute as stated in Thomas v. State*, 120 Nev. 37, 44-45, 83 P.3d 818, 823 (2004). Instead, the State moved for the prior acts' admission as evidence of uncharged sexual offenses under NRS 48.045(3), and as *res gestae* evidence under NRS 48.035(3). The district court admitted two acts, taking nude photographs of ED and giving her Soma, as evidence of uncharged sexual offenses under NRS 48.045(3), and two acts, making ED wear fishnet stockings and showing her pornography, as *res gestae* evidence.

The district court abused its discretion in admitting evidence of the nude photographs and the fishnet stockings on the bases it did. *See Newman v. State*, 129 Nev. 222, 231, 298 P.3d 1171, 1178 (2013) (reviewing the admission of prior misconduct evidence for an abuse of discretion). This evidence did not meet the requirements for the admission of prior sexual offense and *res gestae* evidence. Although we ultimately determine its admission was harmless, the evidence was unnecessary and the errors avoidable, so we address them fully. Regardless of the path taken to admission, compliance with the procedural requirements for admitting uncharged misconduct evidence is essential to balance the unique

challenges of prosecuting sexual offenses involving children with the defendant's right to a trial free from undue prejudice.

i.

NRS 48.045(3) creates an exception to NRS 48.045(2)'s ban on propensity evidence. It permits "the admission of evidence in a criminal prosecution for a sexual offense that a person committed another crime, wrong or act that constitutes a separate sexual offense." The requirements for admission under NRS 48.045(3) are set out in *Franks v. State*: (1) the uncharged act must constitute a sexual offense under NRS 179D.097; (2) it must be relevant to the charged offense; (3) the district court must make a preliminary finding that "a jury could reasonably find by a preponderance of the evidence that the act had occurred"; and (4) using the factors enumerated in *United States v. LeMay*, 260 F.3d 1018, 1028 (9th Cir. 2001), the district court must determine that the probative value of the act is not substantially outweighed by the danger of unfair prejudice. 135 Nev. at 4-6, 432 P.3d at 755-57. The State must obtain advance permission to introduce such evidence by motion to the district court, outside the presence of the jury. *Id*. at 5, 432 P.3d at 756.

Both acts admitted under NRS 48.045(3) easily satisfy the first two *Franks* requirements. Taking nude photographs of a minor is a crime under NRS 179D.097(1)(h) and NRS 200.710 (criminalizing the production of child pornography), and giving Soma to ED prior to sexual contact is a crime under NRS 179D.097(e) (providing that a "sexual offense" includes administering a drug with the intent to enable or assist the commission of another sexual offense). Furthermore, both acts are relevant to the charged offenses because they demonstrate that Alfaro had a propensity to engage in sexual behavior with a child. *See Franks*, 135 Nev. at 6, 432 P.3d at 757.

The State stumbles on the quantum of proof regarding the nude photographs. The district court decided the State's motion based on the preliminary hearing transcript and did not reserve or revisit its pretrial admissibility determination to take into account the evidence adduced at trial. While ED testified at the preliminary hearing and at trial that Alfaro gave her Soma to facilitate his assaults, *see Keeney v. State*, 109 Nev. 220, 229, 850 P.2d 311, 317 (1993) (concluding that victim testimony alone met the higher standard of clear and convincing evidence required by NRS 48.045(2)), *overruled in part on other grounds by Koerschner v. State*, 116 Nev. 1111, 13 P.3d 451 (2000), only Detective Harms testified regarding the nude photographs based on her original interview with ED, and even that testimony was minimal and lacked specificity. Searches of Alfaro's electronic devices, motel room, and storage unit failed to turn up any physical evidence of the photographs, nor did Alfaro admit to their existence.

This dearth of relevant supporting facts is also relevant to the last step of *Franks*. There, the district court weighs the probative value of the evidence with the threat of undue prejudice, which must include an evaluation based on a nonexhaustive list of factors from *LeMay*:

> (1) the similarity of the prior acts to the acts charged, (2) the closeness in time of the prior acts to the acts charged, (3) the frequency of the prior acts, (4) the presence or lack of intervening circumstances, and (5) the necessity of the evidence beyond the testimonies already offered at trial.

*Franks*, 135 Nev. at 6, 432 P.3d at 756 (quoting *LeMay*, 260 F.3d at 1028).

While these factors are useful, their isolated presentation in *Franks* implies that consideration of the list is both necessary and sufficient. *See State v. Eighth Judicial Dist. Court (Doane)*, 138 Nev., Adv.

SUPREME COURT
OF
NEVADA

(O) 1947A

15

Op. 90, 521 P.3d 1215, 1222 (2022) (emphasizing that district courts must consider each *LeMay* factor). But revisiting *LeMay* reveals a more thoughtful, holistic analysis, including considerations of whether the prior acts were based on "proven facts," whether the acts corroborated or bolstered the victim's testimony and credibility, and whether their probative value was clear and not "capable of multiple characterizations." *LeMay*, 260 F.3d at 1028-29. *LeMay* emphasized that neither these factors nor the ones adopted in *Franks* were exhaustive, citing to yet more factors from the Tenth Circuit. *Id.* at 1032 n.1. And while we do not prescribe the same approach to the district courts, *LeMay* also stressed the appropriateness of the district court's decision to prevent the government from using such evidence in opening statement "until after the prosecution had introduced . . . its other evidence, in order to get a feel for the evidence as it developed at trial before ruling on whether LeMay's prior acts of child molestation could come in." *Id.* at 1028.

A careful reading of *LeMay* does not support rote processing of factors to arrive at a pretrial decision that is then cast in stone. Rather, the district court's task is to evaluate the probative value of the uncharged misconduct in relation to the charged crime and the state of the evidence, weighed against the threat of undue prejudice arising from any unnecessarily inflammatory, factually unsupported, or unduly duplicative aspects of the evidence. The five listed *LeMay* factors, adopted in *Franks*, can and should be used in service of that goal, but the reviewing district court should not feel constrained to use only those factors to the exclusion of other meaningful and helpful guidance provided in *LeMay* and elsewhere. *See Chaparro v. State*, 137 Nev. 665, 670, 497 P.3d 1187, 1193 (2021) ("[T]he

Supreme Court
OF
Nevada

(O) 1947A

16

[*LeMay*] factors . . . are not elements to be met before evidence is admissible but considerations for the district court to weigh.").

Returning to the evidence at issue here, admitting the nude photograph evidence cannot be justified under *LeMay*. Scant proof exists in the record that Alfaro took nude photographs of ED. But even accepting arguendo that the proof was enough to meet the *Franks* threshold preponderance-of-the-evidence test, the creation of child pornography is also a grave and separate offense that added little to the narrative underlying the charged offenses in this case. To justify the risk of prejudice and distraction this evidence carried, more in the way of certainty of the photographs' existence was needed. *See* 2 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:86 (4th ed. 2022 Update) (discussing FRE 414, the federal analog to NRS 48.045(3), and noting that "uncertainty over prior [sexual] bad acts lessens their probative value and raises the risk of prejudice"). Evidence concerning the Soma pills, by contrast, met the *LeMay* standards: ED testified that Alfaro had her take Soma; this evidence was corroborated by Alfaro's prescription for Soma; and the evidence had high probative value since it strengthened ED's testimony by explaining how Alfaro used Soma to facilitate his assaults.

ii.

The other two acts, making ED watch pornography and wear fishnet stockings, were admitted under NRS 48.035(3) as *res gestae* evidence. Both the State and the district court refer to *res gestae* evidence as evidence that "explains," provides "background" for, "completes the picture" of, or is "relevant" to the charged crime, and evince an understanding that virtually any act committed during the entire course of the charged conduct can be admitted as *res gestae*. These characterizations are not accurate.

NRS 48.035(3), codifying *res gestae*, is an "extremely narrow" basis for admissibility. *Weber v. State*, 121 Nev. 554, 574, 119 P.3d 107, 121 (2005), *overruled on other grounds by Farmer v. State*, 133 Nev. 693, 698, 405 P.3d 114, 120 (2017); *see Bellon v. State*, 121 Nev. 436, 444, 117 P.3d 176, 181 (2005); *Sutton v. State*, 114 Nev. 1327, 1331, 972 P.2d 334, 336 (1998). It is insufficient that the uncharged acts "explain," "make sense of," or "provide a context for" the charged crimes, *Weber*, 121 Nev. at 574, 119 P.3d at 121, or that the acts occurred at some ambiguous point in time during the charged course of conduct. An uncharged act may only be admitted as *res gestae* if it is part of the same "transaction"—the same temporal and physical circumstances—as the charged act. *See Dutton v. State*, 94 Nev. 461, 464, 581 P.2d 856, 858 (1978) (admitting evidence of a defendant's possession of a stolen item exchanged at the same time as the stolen item for which he was charged), *overruled on other grounds by Gray v. State*, 100 Nev. 556, 558 n.1, 688 P.2d 313, 314 n.1 (1984); *Allan v. State*, 92 Nev. 318, 320, 549 P.2d 1402, 1403 (1976) (admitting testimony from two boys the defendant assaulted immediately prior to the charged crime in the same room). The uncharged act and the crime "must be so interconnected" that it is *nearly impossible* for the witness to describe the crime without referring to the uncharged act. *Bellon*, 121 Nev. at 444, 117 P.3d at 181; *see Cirillo v. State*, 96 Nev. 489, 493, 611 P.2d 1093, 1096 (1980) (noting that the uncharged act must be a "necessary incident" or "immediate concomitant" of the charged crime, or part of the same "continuous transaction").[3]

---

[3]The strict requirements of *res gestae* evidence reflect its derogation of the general rule that the use of prior bad acts is "heavily disfavored," *Tavares v. State*, 117 Nev. 725, 730, 30 P.3d 1128, 1131 (2001), and that it

The State also relies on *Perez v. State* to argue that prior acts are admissible if they constitute evidence of "grooming behavior," facially innocuous acts such as "gifts, praises, and rewards" used to "develop a bond between the victim and offender and, ultimately, make the victim more receptive to sexual activity." 129 Nev. 850, 853, 855, 313 P.3d 862, 864, 866 (2013). But *Perez* speaks to the admissibility of certain expert testimony on grooming. *Id.* at 859, 313 P.3d at 868. That issue is not raised here, and this court has never held, nor does any statute provide, that evidence of grooming is categorically admissible, as *res gestae* evidence or otherwise.

Because ED testified that Alfaro made her watch pornography while committing the charged acts, and that Alfaro mimicked the acts in the pornography as she was watching it, the act qualifies as *res gestae* because it occurred at the same time and in the same place as the charged acts. The evidence that Alfaro had ED dress up in fishnet stockings, however, does not qualify. The fishnet stocking incident(s) occurred in Fernley, months prior to the charged acts, such that ED could, and in fact did, describe the charged acts without referring to the fishnet stockings incident(s). Therefore, the district court erred in admitting evidence that Alfaro made ED wear fishnet stockings.

---

does not balance prejudicial effect against probative value, *State v. Shade*, 111 Nev. 887, 894, 900 P.2d 327, 331 (1995). Of note, and for these reasons, *res gestae* is falling out of favor nationwide. *See, e.g.*, *Rojas v. People*, 504 P.3d 296, 307 (Colo. 2022) (abolishing *res gestae*, following the "many jurisdictions [that] have determined that *res gestae* is incompatible with the modern Rules [of evidence]"); *State v. Gunby*, 144 P.3d 647, 663 (Kan. 2006) (same); *see generally* Daniel J. Capra & Liesa L. Richter, *Character Assassination: Amending Federal Rule of Evidence 404(b) to Protect Criminal Defendants*, 118 Colum. L. Rev. 769, 798-802 (2018).

## B.

Having concluded that the district court erroneously admitted two prior bad acts, we consider the gravity of the error. We will affirm the otherwise erroneous admission of evidence if it could have been admitted another way, *Ledbetter v. State*, 122 Nev. 252, 260, 129 P.3d 671, 677 (2006), or if the error was harmless such that it did not have "a substantial and injurious effect or influence in determining the jury's verdict," *Tavares v. State*, 117 Nev. 725, 732, 30 P.3d 1128, 1132 (2001) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

Evidence of the nude photographs, erroneously admitted under NRS 48.045(3) (prior sexual offenses), could not have been admitted as *res gestae* because the State provided no evidence as to when or under what circumstances the photographs were taken. Conversely, evidence regarding the fishnet stockings incident(s), erroneously admitted under NRS 48.035(3), could not have been admitted under NRS 48.045(3) because the record does not support a determination that the act constitutes a sexual offense under NRS 179D.097. *See Franks*, 135 Nev. at 4-5, 432 P.3d at 756. And, while perhaps the erroneously admitted evidence could have been admitted under NRS 48.045(2), the State did not make that argument in district court or on appeal, thereby failing to identify the permissible non-propensity purpose for admitting the evidence and, as to the nude photographs, failing to prove the uncharged act by the clear and convincing evidence required. *See Petrocelli*, 101 Nev. at 52, 692 P.2d at 508.

The question, then, is whether the error in admitting evidence concerning the nude photographs and fishnet stockings was harmless. The record in this case demonstrates that the erroneously admitted uncharged acts had marginal relevance, and their potential for prejudice paled in

SUPREME COURT
OF
NEVADA

(O) 1947A

20

comparison to the acts with which Alfaro was charged, which the State adequately proved. We therefore deem the erroneous admission of the two prior acts harmless under the "substantial and injurious effect" standard applicable to evidentiary error. [4]

## C.

As for the jury instructions, Alfaro first contends that the court erred by rejecting his proposed instruction that a defense attorney may argue negative inferences arising from the State's failure to call important witnesses, citing *Rimer v. State*, 131 Nev. 307, 329, 351 P.3d 697, 713 (2015). But license to make an argument does not entitle Alfaro to a jury instruction to that effect, so we reject this claim out of hand.

Second, he argues that jury instruction no. 23, defining "lewdness" as it appears in *Black's Law Dictionary* and *Berry v. State*, 125 Nev. 265, 280, 212 P.3d 1085, 1095 (2009), *overruled on other grounds by State v. Castaneda*, 126 Nev. 478, 245 P.3d 550 (2010), conflicts with the definition of "lewdness" in the statute criminalizing lewdness with a child, NRS 201.230, under which Alfaro was charged. On de novo review, we agree that instruction no. 23 is not an accurate statement of the law, and the district court erred in giving it. *Berry*, 125 Nev. at 273, 212 P.3d at 1091. Instruction no. 23 stated, "[l]ewdness is defined as sexual conduct that is obscene or indecent; tending to moral impurity or wantonness," but

---

[4]Neither Alfaro nor the State discuss harmless error as to the specific evidentiary errors that occurred, instead deferring the discussion to the larger context of Alfaro's cumulative error claim. Alfaro does not argue that the State's failure in this regard triggers a waiver analysis under *Belcher v. State*, 136 Nev. 261, 464 P.3d 1013 (2020). Assuming without deciding that *Belcher* applies, it is appropriate to address harmlessness because the record is short, and the issue is not close applying the *Kotteakos* standard.

"lewdness with a child" already has a statutory definition with four distinct elements, was laid out in instruction no. 20, and does not require further commentary, *Summers v. Sheriff*, 90 Nev. 180, 182, 521 P.2d 1228, 1228-29 (1974). Furthermore, since instruction no. 23 does not mention physical contact and "lewdness with a child" requires it, instruction no. 23 permitted the jurors to convict Alfaro for merely "obscene or indecent" behavior, even if they found he never touched ED. This is not reversible error here, however, since it was plain from the evidence, the other jury instructions, and the charges themselves that the lewd acts for which Alfaro was charged required a touching. *See Carver v. El-Sabawi*, 121 Nev. 11, 14, 107 P.3d 1283, 1285 (2005) (noting that an instructional error is only reversible if it "resulted in a miscarriage of justice").

## IV.

Alfaro argues two errors at sentencing. First, he posits that the district court impermissibly relied on "prior uncharged crimes" in determining the appropriate sentence, in violation of *Denson v. State*, 112 Nev. 489, 493-94, 915 P.2d 284, 287 (1996) (permitting the use of past "life, health, habits, conduct, and mental and moral propensities," but not prior crimes), as evidenced by Judge Breslow's statement, "Crimes like this are against all little girls. They're against society. . . . [S]ome crimes just transcend the actual people involved. This is one of them." While we do not condone the court's statements, they show that Judge Breslow was "offended by the facts of the crime committed," *Cameron v. State*, 114 Nev. 1281, 1283, 968 P.2d 1169, 1171 (1998) (internal citations omitted), rather than prejudiced by "information or accusations founded on facts supported only by impalpable and highly suspect evidence," *Silks v. State*, 92 Nev. 91, 94, 545 P.2d 1159, 1161 (1976).

SUPREME COURT
OF
NEVADA

(O) 1947A

22

Second, Alfaro argues that the length of his sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment because it is unreasonably disproportionate to the crime. *See Blume v. State*, 112 Nev. 472, 475, 915 P.2d 282, 284 (1996) (holding that a sentence within statutory limits is not cruel and unusual unless the statute is unconstitutional, or the sentence is "so unreasonably disproportionate to the offense as to shock the conscience") (internal quotation omitted). But his aggregate sentence of 275 years to life is within the statutory limits. *See* NRS 200.366(3)(c) (establishing range of 35 years to life for each sexual assault against a child); NRS 201.230(2) (establishing range of 10 years to life for lewdness with a child). Alfaro argued for a sentence of 35 years to life, while the State recommended 45 years to life. The sentence the district court imposed differed from the recommended sentences because it ran the sentences on each count consecutively. This court has upheld consecutive life sentences on similar charges. *See Chavez v. State*, 125 Nev. 328, 348, 213 P.3d 476, 490 (2009); *but see Sims v. State*, 107 Nev. 438, 442, 814 P.2d 63, 65 (1991) (Rose, J., dissenting) (noting that, of the many bases for reversal of a criminal conviction, the sentence "has the greatest ultimate effect on the defendant"). While the sentence's length, the district court's refusal to follow sentencing recommendations of either party, and the court's remarks at sentencing are troubling, precedent does not support reversal for resentencing where, as here, the sentence imposed is within statutory limits and not unconstitutionally disproportionate.

V.

"The cumulative effect of errors may violate a defendant's constitutional right to a fair trial even though the errors are harmless individually." *Hernandez v. State*, 118 Nev. 513, 535, 50 P.3d 1100, 1115

SUPREME COURT
OF
NEVADA

(0) 1947A

23

(2002). As discussed, the district court erred in admitting evidence of two acts of uncharged misconduct and in giving instruction no. 23. We must decide whether these errors, though harmless individually, support reversal for cumulative error. In evaluating cumulative error, we consider (1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged. *Valdez v. State*, 124 Nev. 1172, 1195, 196 P.3d 465, 481 (2008).

This case rests, as many cases of sexual assault do, on the competing testimony of the victim and the defendant. There is no physical evidence of Alfaro's crimes, no members of ED's family testified, and Alfaro denied the charges against him in an interview played for the jury. However, we have repeatedly held that a child victim's testimony is sufficient for conviction, even if uncorroborated, if the victim testifies with "*some* particularity" and bears "some reliable indicia." *LaPierre v. State*, 108 Nev. 528, 531, 836 P.2d 56, 58 (1992). ED's testimony met those requirements, and the district court, which observed the witnesses, found ED credible and her testimony convincing. Nor did the errors play an important role at trial—the State did not dwell on the erroneously admitted evidence, and the instructional error as to lewdness was not material to the facts and charges in the case. So, while Alfaro's crime and sentence are undoubtedly grave, the quantity and character of the errors was not such as to affect the verdict and we reject the cumulative error claim.

For these reasons, we reverse Alfaro's conviction on count XI and remand for entry of an amended judgment of conviction but otherwise affirm.

_____Pickering_____, J.
Pickering

We concur:

_____Cadish_____, J.
Cadish

_____Gibbons_____, Sr. J.
Gibbons